## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Andrew Beckett[1], individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>Aetna, Inc., Aetna Life Insurance Company, Aetna Specialty Pharmacy, LLC, and DOE Vendor,<br><br>                    Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff, individually and on behalf of the classes set forth below, through his undersigned counsel, brings the following Class Action Complaint against Defendants Aetna, Inc., Aetna Life Insurance Company, and Aetna Specialty Pharmacy, LLC (collectively, "Aetna") and DOE Vendor (collectively, "Defendants").

## <u>INTRODUCTION</u>

1.      This is a case about Aetna's repeated failure to respect the privacy rights of people who are taking HIV-medications.

2.      In 2014 and 2015, Aetna was sued in two separate class action lawsuits. Among

---

[1] A pseudonym has been used in place of Plaintiff's real name due to privacy concerns. Plaintiff will file a motion requesting that he be permitted to proceed under pseudonym because he has a reasonable fear of severe harm should his identity be revealed based on the nature of the case. *See Doe v. Megless*, 654 F.3d 404, 408-9 (3d. Cir. 2011) (endorsing a non-comprehensive balancing test, which balances, "…whether a litigant has a reasonable fear of severe harm that outweighs the public's interest in open litigation," and including AIDS as an example of an area where courts have permitted plaintiffs to proceed with pseudonyms); *see also Smith v. Milton Hershey Sch*., No. CIV.A. 11-7391, (E.D. Pa. 2011) (district court allowing mother of HIV-positive minor child to proceed under pseudonym); *Doe v. Deer Mountain Day Camp, Inc*., No. 07-cv-5495 (S.D.N.Y. Jun. 22, 2007) (permitting minor and his parent alleging HIV discrimination against camp to proceed under pseudonym); *EW v. New York Blood Center*, 213 F.R.D. 108, 110 (E.D.N.Y. 2003) (holding that the prejudice of embarrassment and fear of stigmatization because plaintiff had a "sexually and blood-transmitted disease" like AIDS "is real.").

other things, those lawsuits alleged that Aetna jeopardized the privacy of people taking HIV medications by requiring its insureds to receive their HIV medications through mail and not allowing them to pick up their medications in person at the pharmacy.

3.     Those lawsuits were never certified as class actions. Instead, Aetna settled with the individual plaintiffs in those cases, paying the individuals $24,000 and paying their lawyers an undisclosed sum.

4.     As a condition of the individual settlements, Aetna agreed to send all of its insureds who had been required to mail-order their HIV medicines a notice informing them that they were no longer required to order their medications through the mail.

5.     Aetna also agreed to pay up to $295,000 in actual damage claims to individuals who incurred extra expenses due to Aetna's policies. This settlement was not a class action settlement. The settlement did not release any claims besides those of the lead plaintiffs.  The settlement was neither presented to nor approved by any court.

6.     Aetna provided contact information for approximately 12,000 people to a third party mailing vendor, DOE Vendor, who processed the mailing.

7.     In the course of sending out the agreed notices, however, Aetna again failed to recognize the dangers associated with sending information about HIV medications through the mail.

8.     Rather than sending instructions about how people taking HIV medications could fill their prescriptions in an opaque envelope, Aetna and DOE Vendor instead sent this highly sensitive information in an envelope with a large transparent glassine window.

9.     The instructions about how individuals could obtain their HIV medications were visible from the outside of the envelope.

10.     As shown in the photograph below, the instructions for the recipient to fill their

HIV medication prescription was plainly visible through the large-window section of the envelope. Specifically, the visible portion of the letter clearly indicated that it was from Aetna, included a claims number and information for the addressee, and stated "[t]he purpose of this letter is to advise you of the options…Aetna health plan when filling prescriptions for HIV Medic…"



11. HIV is the virus that causes AIDS.

12. Despite the fact that the first AIDS case was identified more than 40 years ago, people living with HIV and AIDS still face extreme stigma. In fact, stigma is widely recognized as a driver of the AIDS epidemic. *See* The People Living With HIV Stigma Index, at http://www.stigmaindex.org/. To ensure that people feel safe to come forward to be tested and treated for HIV, most states have enacted laws that protect the confidentiality of a person's HIV-related information.

13. Defendants' actions, as described below, carelessly, recklessly, negligently, and impermissibly revealed HIV-related information of their current and former insureds to their family, friends, roommates, landlords, neighbors, mail carriers and complete strangers. This action seeks redress against Defendants for their unlawful exposure of Plaintiff's and Class members' confidential HIV-related information.

**PARTIES**

14.    Plaintiff Andrew Beckett is a resident of Pennsylvania and lives in this judicial district.  He lives with his sister and her fiancée.  To protect his privacy, Plaintiff is proceeding using a pseudonym.

15.    Defendant Aetna, Inc. is a Pennsylvania corporation with its principal place of business in Pennsylvania.

16.    Defendant Aetna Specialty Pharmacy LLC is a Delaware limited liability company registered to do business in Pennsylvania.

17.     Defendant Aetna Life Insurance Company is a Connecticut company.

18.    The Aetna Defendants have principal places of businesses in Pennsylvania and Connecticut.

19.    Defendant DOE Vendor is the as yet unidentified vendor that Aetna used to send its mailing. On August 24, 2017, Sally Friedman, Legal Director of The Legal Action Center, spoke with Aetna's General Counsel, who declined to identify the vendor, citing defamation concerns. Plaintiff will substitute the proper Defendant when such information becomes available.

**JURISDICTION AND VENUE**

20.    This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) of the Class Action Fairness Act because the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are at least 100 members of the proposed Class, and at least one member of the proposed Class is a citizen of a different state from one of the Defendants.

21.    Venue is appropriate in this district under 28 U.S.C. § 1391 because Aetna, Inc. and Aetna Specialty Pharmacy LLC reside in this District and because a substantial part of the events

giving rise to the claims occurred in this District.  Plaintiff resides in this district and received the letter unlawfully disclosing that he has a prescription for HIV medication in this district.

### DEFENDANTS' UNAUTHORIZED DISCLSOURE OF HIV INFORMATION

22.     Since HIV and AIDS first entered the public consciousness as an ongoing public health crisis in the early 1980s, people living with HIV and AIDS have been subjected to social stigma and discrimination.

23.     HIV related stigma is still widely prevalent, and such stigma can have a debilitating effect on people living with HIV.  The People Living with HIV Stigma Index is an international research project spearheaded by the Global Network of People Living with HIV launched in 2008 to measure and detect changing trends in relation to stigma and discrimination experienced by people living with HIV.  *See* The People Living With HIV Stigma Index, at http://www.stigmaindex.org/. While the U.S. study is ongoing, the data from Michigan reveals sobering levels of HIV-related stigma in the daily lives of Americans with HIV.  For example, nearly 73% of participants experienced at least 1 of 11 forms of exclusion, stigma or discrimination, including gossip, rejection by family or friends, exclusion from religious organizations, or verbal and/or physical harassment.  *See* UNIFIED-HIV Health and Beyond, The U.S. People Living with HIV Stigma Index: Michigan, Wave I Findings, 2014-2016, at 30.

24.     As recently as 2012, more than half of Americans still said they felt some discomfort with people with HIV/AIDS.  *See* Henry J. Kaiser Family Foundation, The Washington Post/Henry J. Kaiser Family Foundation 2012 Survey of Americans on HIV/AIDS (July 2012).[2]  In a national survey, 52 percent of respondents indicated they would be less than "very comfortable" working with someone with HIV/AIDS.  *Id.*  The same survey found many Americans with misconceptions about how HIV is transmitted.  *Id.*

---

[2] Available at http://kff.org/hivaids/poll-finding/2012-survey-of-americans-on-hivaids.

25.     A survey conducted in 2015 by Kaiser Family Foundation found that 75% of survey respondents from Georgia believed that people living with HIV suffer from a lot or some stigma and discrimination. *See* Henry J. Kaiser Family Foundation, The Public Attitudes and Knowledge about HIV/AIDS in Georgia (November 2015).[3]  Only 20% of respondents said that they would be very comfortable personally with having their food prepared by someone who has HIV, and only 30% said they would be very comfortable having a roommate who has HIV.  *Id.*  Only 8% of individuals said that they would be very or somewhat comfortable being in a sexual relationship with someone who has HIV.  *Id.*

26.     In addition, people living with HIV often are not able to turn to their families for support due to the associated stigma.  The same Georgia survey found that 91% of Georgians agree that having the support of family and loved ones is "very important" to the health and well-being of people with HIV. Yet, comparatively only 38% say most people with HIV in the state get that support (44% say most do not and 18% don't know).  *Id.*

27.     To ensure that people feel safe to come forward to be tested and treated for HIV, most states have enacted laws that protect the confidentiality of a person's HIV-related information.

28.     For example, in Pennsylvania, the state legislature passed the Confidentiality of HIV-Related Information Act (commonly known as "Act 148"), to promote "testing and counseling" by "establishing confidentiality requirements which protect individuals from inappropriate disclosure and subsequent misuse of confidential HIV related information."  35 P.S. § 7602(a).  The Act strictly limits health or social service providers from disclosing HIV-related information except in certain limited circumstances.  35 P.S. § 7607.

---

[3]  Available at http://www.kff.org/hivaids/poll-finding/public-attitudes-and-knowledge-about-hivaids-in-georgia/.

29.     Thirty-nine states have either HIV-specific privacy statutes or general privacy provisions that expressly mentioned HIV. The remaining states may protect its confidentiality under other statutes or provisions. *See* Electronic Privacy Information Center, Lawrence O. Gostin, *Legislative Survey of State Confidentiality Laws, with Specific Emphasis on HIV and Immunization*, available at https://epic.org/privacy/medical/cdc_survey.html.

30.     Federal laws, such as the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), were also enacted in recognition of the important privacy rights that individuals should expect to have over their sensitive medical information.

31.     Aetna is a health care plan provider and provides coverage for HIV medications.

32.     In 2014 and 2015, Aetna was sued in two lawsuits alleging that it had illegally required its insureds to obtain HIV medication solely through the mail, instead of allowing insureds to also obtain their medications in person at a retail pharmacy. *Doe v. Aetna, Inc.*, No. 14-cv-2986 (S.D. Cal.); *Doe v. Coventry Health Care, Inc.,* No. 15-cv-62685 (S.D. Fla.) (collectively, the "*Doe* lawsuits").

33.     The *Doe* lawsuits explicitly noted the privacy concerns associated with receiving HIV related information in the mail. *See, e.g.*, *Doe v Coventry*, No. 15-cv-62685, Am. Compl. ¶¶ 1, 3-6, 8, 9, 11, 32, 65, 68, 71, 92 (S.D. Fla. May 27, 2015) (ECF No. 61) (noting privacy concerns associated with being required to receive HIV medications through the mail).

34.     The *Doe* lawsuits were never certified as class actions.

35.     Instead, the *Doe* lawsuits were resolved in a consolidated individual settlement. The settlement was neither presented to nor approved by any court.

36.     The Settlement Agreement is attached hereto as Exhibit 1 ("*Doe* Settlement Agreement"), and is incorporated here by reference.[4]

---

[4] The *Doe* Settlement Agreement only releases the claims of the named plaintiffs in the *Doe*

37.     All of the Aetna Defendants sued here were parties to the *Doe* Settlement Agreement.

38.     As part of the *Doe* Settlement Agreement, the Aetna Defendants agreed to send out notices ("*Doe* Settlement Notices") to former and current members of certain Aetna health plans who had submitted claims for coverage for HIV medication.

39.     Aetna used a third-party mailing vendor, Defendant DOE Vendor, to send these notices.  Aetna provided its insureds' personal information to that vendor, and instructed the vendor to send the notices, each of which clearly identified Plaintiff and Class members' as people taking HIV medications.

40.     Aetna never sought or received a court order allowing it to disclose this information to its vendor.  While the courts in the *Doe* litigation allowed disclosure to vendors for litigation purposes, those courts' orders did not contain the findings required under Pennsylvania law, which are specific to HIV-related information, namely a finding that there is a "compelling need" for the disclosure and that the need could not be accommodated by other means.

41.     At the end of July 2017 and beginning of August 2017, Aetna's notices substantially identical to the notice set forth in Exhibit A2 and B2 of the *Doe* Settlement Agreement were sent by Aetna, through its vendor, to approximately 12,000 people.  *See* http://www.cnn.com/2017/08/24/health/aetna-hiv-status/index.html.

42.     One set of notices was sent to current members of certain Aetna health plans to inform them of the options available to fill prescriptions for HIV medications. *Doe* Settlement Agreement Ex. A2.  The first sentence of this notices states: "The purpose of this letter is to advise you of the options available to you as a member of your Aetna health plan when filling

_____

actions.  It was not a class action settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure.

prescriptions for HIV Medications." *Id.*

43.     Another set of notices informs current and former plan members how to submit claims for reimbursement of out-of-pocket costs to be paid under the *Doe* Settlement Agreement by using a claim form. *Doe* Settlement Agreement Ex. B2, C2. The first sentence of this set of notices states: "Our records show that you sought coverage for HIV Medications under an Aetna health plan." *Id.*

44.     To send out the notices, Aetna's vendor used an envelope with a large transparent glassine window.

45.     As shown in paragraph 10 above, due to the large-window envelope, and the way in which the notices were folded and inserted in the envelope, the individual's name and address, as well as their claim number and instructions related to HIV medication were clearly visible from the face of the envelope to anyone who came into contact with the mail.

46.     Aetna recklessly failed to properly supervise Defendant DOE Vendor to ensure that the highly sensitive information Defendants provided was not illegally disclosed to third parties.

47.     Defendants easily could have avoided the disclosure of this private information. For example, Defendants could have used the industry-standard practice of protecting the contents of the envelope by using a blank cover page that contained only the recipient's name and address. Alternatively, Defendants could have used an envelope that did not have a glassine window. Defendants also could have simply ensured that the text of its letter was appropriately spaced so as not to reveal sensitive information on the transparent part of the envelope that anybody handling the mail could see without opening the envelope.

48.     Envelope vendors acknowledge that envelopes with windows are less secure than conventional solid envelopes. *See* https://www.belightsoft.com/products/resources/envelope-styles-and-sizes ("Open window envelopes are growing in popularity as more environmentally

friendly, however, they are less secure."); http://www.autumnpress.com/wp-content/uploads/2014/02/autumn-press-envelopes-styles-and-sizes.pdf (same).

49. On or about July 31, 2017, Plaintiff received a *Doe* Settlement Notice at his Pennsylvania address.

50. Plaintiff lives with his sister and her fiancée.

51. Plaintiff's sister's fiancée collected the mail from the family mailbox on or about July 31, 2017.

52. As Plaintiff's sister's fiancée was sorting the mail by household recipient, she saw that a letter addressed to the Plaintiff from Aetna contained instructions, visible through a large-window envelope, on how to fill his prescription for HIV medication.

53. Plaintiff's sister's fiancée immediately told Plaintiff's sister about the mail. Specifically, Plaintiff's sister's fiancée believed Plaintiff was living with HIV and did not confide in his family.

54. Plaintiff's sister approached him to "address an issue in the mail." As he looked at his mail, he immediately understood what was happening. He felt he had no choice but to tell her why he was taking HIV medications.

55. Plaintiff is not living with HIV. Rather, he takes HIV medications as part of a regimen of pre-exposure prophylaxis ("PrEP") to prevent himself from acquiring HIV.

56. As a result of Defendants' reckless mailing, Plaintiff found himself in the unexpected and uncomfortable position of disclosing that he was taking medicine to protect himself from getting HIV.

57. This conversation led to further embarrassing and invasive discussions on why he needed to protect himself, which activities put him at risk and other topics of an intimate nature.

58.     These conversations between Plaintiff, his sister and her fiancée have changed the nature of their relationships to one another and in their household.

59.     Plaintiff sought out a prescription for PrEP to be responsible and proactive about his health.  Defendants' mailing has caused him to feel embarrassed and exposed.

60.     Plaintiff has suffered from increased stress and anxiety as a result of Defendants' reckless conduct.  The increased stress has exacerbated Plaintiff's pre-existing medical conditions and altered his relationships with his family.

61.     Class Members all across the country similarly had their private health information revealed, and have and will continue to suffer the real consequences associated with these unauthorized disclosures that resulted directly from Defendants' negligent and reckless actions.

## DAMAGES

62.     Plaintiff and Class members have suffered and are entitled to damages for the lost benefit of their bargain with Aetna.  Plaintiff and Class members paid Aetna for health insurance. Part of the price for insurance was intended to fund adequate privacy practices.  The lost benefit of the bargain is measured by the difference between the value of what Plaintiff and Class members should have received when they paid for their insurance, and the value of what they actually did receive: insurance without adequate privacy safeguards.

63.     Plaintiff and Class members suffered a loss of value of their confidential medical information when it was disclosed through the envelope window.

64.     Plaintiff and Class members have suffered and will continue to suffer embarrassment, humiliation, frustration, anxiety, emotional distress, and fear, and are at increased risk for losing employment, housing, access to health care, and even violence or other trauma as a result of the disclosure of their use of HIV medications.

65.     Plaintiff and the Pennsylvania Subclass Members (defined below) are entitled to

statutory damages of $100 per person under 73 Pa. Stat. Ann. § 201-9.2.

## CLASS ACTION ALLEGATIONS

66.     Plaintiff brings this action individually and on behalf of the following Class and

Subclass defined below (together, the "Classes"):

*Nationwide Class*. All persons whose Aetna *Doe* Settlement Notice was mailed to a United States address.

*Pennsylvania Subclass.* All persons whose Aetna *Doe* Settlement Notice was mailed to a Pennsylvania address.

67.     The members of the Classes are so numerous that the joinder of all members is

impractical.  While the exact number of Class members is unknown at this time, the Nationwide

Class is estimated by Aetna to be approximately 12,000 people and Plaintiff estimates that the

Pennsylvania Subclass exceeds 100 people.

68.     The recipients of the *Doe* Settlement Notices are easily and quickly ascertained

from Defendants' records.  Defendants know exactly what was sent and to whom it was sent. Thus,

the proposed Classes are ascertainable.

69.     There are common questions of fact and law common to the Class as all members

of the Classes were subject to the same conduct under the same factual circumstances.  Common

questions of law and fact include:

a.      whether Defendants violated the Pennsylvania Confidentiality of HIV-Related

Information Act (Act 148), 35 Pa. Stat. Ann. §§ 7601, *et. seq.*

b.      whether Defendants had a duty to use reasonable care to safeguard Class

members' private information;

c.      whether Defendants breached the duty to use reasonable care to safeguard

Class members' medical information;

d.      whether Aetna breached its contractual promises to safeguard Plaintiffs' medical information;

e.      whether Defendants were negligent *per se* in not complying with federal and state privacy laws;

f.      whether Defendants violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1, *et. seq.*; and

g.      The proper measure of damages.

70.     Plaintiff's claims are typical of those of the members of the Classes because Plaintiff suffered the same breach of privacy as that of Class members.

71.     Plaintiff will fairly and adequately protect the interests of the Classes because he and his experienced counsel, are free of any conflicts of interest and are prepared to vigorously litigate this action on behalf of the Classes. Plaintiff's counsel includes Berger & Montague, P.C., as well as the AIDS Law Project of Pennsylvania and the Legal Action Center, based in New York City.  Berger & Montague, P.C. is a national plaintiffs' law firm headquartered in Philadelphia with additional offices in Minneapolis and Washington D.C. The Firm has played lead roles in major cases for over 47 years, resulting in recoveries of over $30 billion for its clients. Both of the undersigned non-profit organizations have represented people living with HIV since the earliest days of the epidemic and are uniquely positioned to advocate on behalf of Plaintiff and Class members.

72.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

73.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Classes predominate over any questions affecting only individual

members of the Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendants' conduct described in this Complaint stems from a common course of conduct.  Members of the Classes do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claim is small compared to the expense and burden of individual prosecution.  Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices.  Moreover, management of this action as a class action will not present any likely difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

## CLAIMS FOR RELIEF

### COUNT I
**Pennsylvania Confidentiality of HIV-Related Information Act (Act 148)**
**35 P.S. § 7601, *et seq.***
**On behalf of Plaintiff and the Classes**

74.     Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs.

75.     The information contained in the *Doe* Settlement Notices was Confidential HIV-Related Information as defined in 35 Pa. Stat. § 7603 because it concerned whether "an individual has been the subject of an HIV-related test, or has HIV, HIV-related illness or AIDS; or any information which identifies or reasonably could identify an individual as having one or more of these conditions."

76.     The HIV-related health information was obtained by Aetna from a person who provides one or more health or social services or pursuant to a release of confidential HIV-related information.

77.     Act 148 prohibits any individual, including an insurer, to whom confidential HIV-related information has been disclosed, to disclose that information to another person without

written consent or other statutorily enumerated authorization. 35 Pa. Stat. § 7607(b).

78.     Defendants violated Act 148 by disclosing Plaintiff's and Class Members' HIV-related information to the mailing vendor without authorization to do so.

79.     Defendants also violated Act 148 by the subsequent unlawful disclosure of Plaintiff and Class Members' HIV-Related Information to DOE Vendor and third parties by sending such information in large-window envelopes where the information was exposed and readily viewable by others.

80.     Act 148 provides that, "any person aggrieved by a violation of this act shall have a cause of action against the person who committed such violation and may recover compensatory damages." 35 Pa. Stat. § 7610.

81.     As a direct and proximate result of Defendants' unlawful acts, Plaintiff and Class Members suffered harm.

82.     Plaintiff and Class Members seek relief, including, but not limited to, injunctive relief and compensatory damages.

**COUNT II**
**Negligence**
**On Behalf of Plaintiff and the Classes**

83.     Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs.

84.     Defendants owed duties of care to protect the disclosure of Plaintiff's and Class Members' private medical information.  Plaintiff and Class Members entrusted their private medical information to Defendants.

85.     Defendants knew or should have known of the risks inherent in disseminating highly personal and confidential, HIV-related medical information of Plaintiff and Class Members in a large-window envelope.

86.     Defendants owed duties of care to Plaintiff and Class Members because Plaintiff and Class Members were foreseeable and probable victims of using a large-window envelope and negligent mailing practices to send confidential medical information.

87.     Defendants acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class Members' private medical information by providing this information to a third party vendor, Defendant DOE Vendor, and by failing to properly supervise the manner in which the vendor disseminated the information.

88.     By allowing the *Doe* Settlement Notices to be sent in a large-window envelope in the fashion that they did, Defendants breached their duties to Plaintiff and Class members by failing to exercise reasonable care in protecting Plaintiff's and the Class Members' medical information.

89.     As a direct result of Defendants' negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including embarrassment, humiliation, frustration, anxiety, emotional distress, and fear, and are at increased risk for losing employment, housing, access to health care,  and even violence or other trauma.

## COUNT III
### Negligence *Per Se*
### On Behalf of Plaintiff and the Classes

90.     Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs.

91.     Pursuant to HIPAA (42 U.S.C. § 1320d, *et seq.*) and Pennsylvania law, Defendants had a duty to implement reasonable safeguards to protect Plaintiff's and Class Members' medical information.

92.     Pursuant to state laws in many states, including but not limited to, the Commonwealth of Pennsylvania, Defendants had a duty to Plaintiff and Class Members' residing

in those states to not disclose and to safeguard Plaintiff's and Class Members' confidential HIV-related medical information.

93.    Defendants breached their duties to Plaintiff and Class Members under the aforementioned statutes by disclosing their information to a third party vendor and by allowing the *Doe* Settlement Notices to be sent in an unreasonable manner.

94.    Defendants' failure to comply with applicable laws and regulations constitutes negligence *per se*.

95.    But for Defendants' negligent breach of their duties and/or negligent supervision, Plaintiff and the Class Members would not have been injured.

96.    The injury and harm suffered by Plaintiff and the Class Members was the reasonably foreseeable result of Defendants' breach of their duties.  Defendants knew or should have known that they were failing to meet their duties, and that Defendants' breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their confidential medical information.

97.    As a direct and proximate result of Defendants' negligent conduct and/or negligent supervision, Plaintiff and Class Members have been injured and are entitled to damages.

## COUNT IV
### Breach of Contract
### On behalf of Plaintiff and the Classes

98.    Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs.

99.    Plaintiff and Class Members who purchased individual insurance policies or who enrolled pursuant to the terms of a group contract with Aetna entered into binding and enforceable contracts with Aetna, supported by consideration including the payment of premiums, contributions and/or fees by Plaintiff and the Class Members.

100.    These contracts incorporated Aetna's privacy polices wherein Aetna promised to protect the privacy of Plaintiff's and Class Members' personal information in accordance with federal and state privacy laws, as well as their own privacy policies.

101.    Specifically, in a document provided to Plaintiff in connection with his Aetna health insurance coverage,  Aetna stated:

> Aetna considers non public personal member information confidential and has policies and procedures in place to protect the information against unlawful use and disclosure. When necessary for your care or treatment, the operation of your health Plan, or other related activities, Aetna uses personal information internally, shares it with our affiliates, and discloses it to health care providers (doctors, dentists, pharmacies, hospitals, and other caregivers), vendors, consultants, government authorities, and their respective agents. These parties are required to keep personal information confidential as provided by applicable law.
>
> Participating Network/Preferred Care Providers are also required to give you access to your medical records within a reasonable amount of time after you make a request.
>
> ***By enrolling in the Plan, you permit Aetna to use and disclose this information as described above on behalf of yourself and your Covered Dependents.***

102.    The Aetna policies and procedures referenced in Aetna's plan documents state that Aetna complies "with all state and federal law pertaining to the security and confidentiality of personal information."

103.    It was a violation of federal, state, and Aetna's privacy policies to disclose Plaintiff's and Class Members' highly confidential HIV medication information in the manner described above.

104.    As a result of Aetna's breach of contract, Plaintiff and Class Members did not receive the full benefit of the bargain and instead received health insurance and/or health care services that were less valuable than described in their contracts.

105.    Plaintiff and Class Members have been injured as a result of Defendants' breach of contract and are entitled to damages.

**COUNT V**
**Invasion of Privacy**
**On Behalf of Plaintiff and the Classes**

106.    Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs.

107.    Defendants published private facts about Plaintiff and Class Members by disclosing and exposing that Plaintiff and Class Members were prescribed HIV medication through the use of the large-window envelope and other negligent mailing practices.

108.    The disclosure of the kinds of medications a person is taking, especially HIV medications, would be offensive to a reasonable person of ordinary sensibilities.

109.    The fact that Class Members are taking HIV medications is not a matter of legitimate public concern.

110.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have been injured and are entitled to damages.

**COUNT VI**
**Pennsylvania Unfair Trade Practices and Consumer Protection Law**
**73 Pa. Stat. Ann. §§ 201-1, *et seq*.**
**On behalf of Plaintiff and the Pennsylvania Subclass**

111.    Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs.

112.    Plaintiff and Pennsylvania Subclass Members purchased insurance and health benefits services from Aetna in trade and commerce for personal, family, and/or household purposes.

113.    Aetna engaged in unlawful, unfair, and deceptive acts and practices, with respect to the sale and advertisement of the services purchased by Plaintiff and Pennsylvania Subclass Members, including by representing that Aetna would adequately protect Plaintiff and Pennsylvania Subclass Members' highly confidential medical information from unauthorized

disclosure and release, and comply with relevant state and federal privacy laws. These injuries outweigh any benefits to consumers or to competition.

114.    Aetna knew or should have known that sending the *Doe* Settlement Notices in large-window envelopes and in the fashion in which they were sent was inadequate to safeguard Plaintiff's and the Pennsylvania's Subclass Members' medical information. Aetna's actions were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and the Pennsylvania Subclass.

115.    As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and Pennsylvania Subclass Members suffered an ascertainable loss of money or property, real or personal, as described above, including the loss of their legally protected interest in the confidentiality and privacy of their personal information.

116.    Plaintiff and Pennsylvania Subclass Members seek relief under 73 Pa. Stat. § 201-9.2, including, but not limited to, injunctive relief, actual damages or $100 per Class Member, whichever is greater, treble damages, and attorneys' fees and costs.

### COUNT VII
### Unjust Enrichment
### On behalf of Plaintiff and the Classes

117.    Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs.

118.    Plaintiff and Class Members conferred a monetary benefit on Aetna in the form of premiums paid for the purchase of health insurance.

119.    Aetna appreciated or had knowledge of the benefits conferred upon them by Plaintiff and Class Members.

120.    The insurance premiums that Plaintiff and Class Members paid to Aetna should have been used, in part, to pay for the administrative costs of reasonable privacy safeguards.

121.     As a result of Aetna's conduct, Plaintiff and Class Members suffered actual damages in an amount equal to the difference in value between health insurance with the reasonable privacy safeguards that Plaintiff and Class Members paid for, and health insurance without reasonable privacy safeguards.

122.     Under principals of equity and good conscience, Aetna should not be permitted to retain the excess funds paid by Plaintiff and Class Members.

123.     Aetna should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all inequitable proceeds received by Aetna.

## JURY TRIAL DEMANDED

124.     Plaintiff, individually and on behalf of the Classes, demands a jury trial as to all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, seeks the following relief:

a.     Determining that this action may proceed as a class action under Fed. R. Civ. P. 23 on behalf of the Classes;

b.     Designating Plaintiff as the class representative for the Classes;

c.     Designating Plaintiff's undersigned counsel as counsel for the Classes;

d.     Issuing proper notice to the Classes at Defendants' expense;

e.     Declaring that Defendants committed the violations of law set forth above;

f.     Ordering appropriate injunctive relief, including the implementation of appropriate policies and procedures to protect HIV- related information;

g.     Awarding damages, including statutory and/or punitive damages;

h.     Awarding reasonable attorneys' fees and costs and expenses; and

i.     Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

Dated: August 28, 2017

Respectfully submitted,

Shanon J. Carson (PA 85957)
Sarah R. Schalman-Bergen (PA 206211)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
scarson@bm.net
sschalman-bergen@bm.net
(215) 875-4656

E. Michelle Drake*
John Albanese*
BERGER & MONTAGUE, P.C.
43 SE Main Street
Suite 505
Minneapolis, MN 55414
emdrake@bm.net
jalbanese@bm.net
(612) 594-5997

Ronda B. Goldfein (PA 61452)
Adrian M. Lowe (PA 313614)
AIDS LAW PROJECT OF PENNSYLVANIA
1211 Chestnut Street, Suite 600
Philadelphia, PA 19107
goldfein@aidslawpa.org
alowe@aidslawpa.org
(215) 587-9377

Sally Friedman*
Monica Welby*
Karla Lopez*
LEGAL ACTION CENTER
225 Varick Street
New York, NY 10014
sfriedman@lac.org
mwelby@lac.org
(212) 243-1313

*Attorneys for Plaintiff and the Classes*
*\* Pro Hac Vice to be filed*