# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Andrew Beckett, Arizona Doe, California Doe, S.A., Colorado Doe, Connecticut Doe, DC Doe, Florida Doe, Georgia Doe, Illinois Doe, Indiana Doe, Kansas Doe, Maine Doe, Maryland Doe, Minnesota Doe, Mississippi Doe, Missouri Doe, Nevada Doe, NewHampshire Doe, NewJersey Doe, NewMexico Doe, NewYork Doe1, NewYork Doe2, NewYork Doe3, NewYork Doe4, NorthCarolina Doe, Ohio Doe, Oklahoma Doe, SouthCarolina Doe, Tennessee Doe, Texas Doe, Virginia Doe, Washington Doe, John Doe, Jane Doe2, John Doe1, John Doe2, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>Aetna, Inc., Aetna Life Insurance Company, and Aetna Specialty Pharmacy, LLC,<br><br>        Defendants. | Case No. 2:17-CV-3864-JS |

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Settlement Agreement") is made and entered into by Plaintiffs Andrew Beckett, Arizona Doe, California Doe, S.A., Colorado Doe, Connecticut Doe, DC Doe, Florida Doe, Georgia Doe, Illinois Doe, Indiana Doe, Kansas Doe, Maine Doe, Maryland Doe, Minnesota Doe, Mississippi Doe, Missouri Doe, Nevada Doe, NewHampshire Doe, NewJersey Doe, NewMexico Doe, NewYork Doe1, NewYork Doe2, NewYork Doe3, NewYork Doe4, NorthCarolina Doe, Ohio Doe, Oklahoma Doe, SouthCarolina Doe, Tennessee Doe, Texas Doe, Virginia Doe, Washington Doe, John Doe, Jane Doe2, John Doe1, and John Doe2 (collectively, "Plaintiffs"), individually and on behalf of the Settlement Class defined below, and Defendants Aetna, Inc., Aetna Life Insurance Company, and Aetna Specialty Pharmacy, LLC (collectively, "Aetna"). Plaintiffs and Aetna are collectively referred to herein as the "Parties."

## RECITALS

A.      On August 28, 2017, Plaintiff Andrew Beckett filed the original Complaint in the above-captioned matter ("Complaint"), captioned *Beckett v. Aetna, Inc., et al.*, No. 2:17-cv-03864-JS (E.D. Pa.) ("*Beckett*"), represented by Berger & Montague, P.C. ("Berger & Montague"), as well as the AIDS Law Project of Pennsylvania ("AIDS Law Project") and the

Legal Action Center ("LAC"), two nonprofit legal organizations whose mission is to represent and advocate for clients who are living with HIV and AIDS. Berger & Montague, AIDS Law Project and LAC are collectively referred to herein as "Co-Lead Class Counsel."

B.      Plaintiff Beckett alleged in his Complaint that Beckett's and Settlement Class Members' Protected Health Information and Confidential HIV-related Information as defined below was disclosed improperly by Aetna and/or Aetna-related or affiliated entities, or on their behalf, to third parties, including, without limitation, Aetna's legal counsel and a settlement administrator, and through a subsequent mailing of written notices that were required to be sent as part of a settlement of legal claims that had been filed against certain Aetna-related entities or affiliates in *Doe v. Aetna, Inc.*, No. 14-cv-2986 (S.D. Cal.) and *Doe v. Coventry Health Care, Inc.*, No. 15-cv-62685 (S.D. Fla.) (collectively, the "*Doe* lawsuits"). The Complaint further alleged that Aetna was responsible for all financial harm and non-financial harm caused by the disclosure under various theories of liability including negligence, negligence *per se*, invasion of privacy, unjust enrichment, and violations of Pennsylvania's Confidentiality of HIV-Related Information Act, 35 P.S. § 7601 and Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-201-1 –201-9.3.

C.      Co-Lead Class Counsel and Aetna began discussions soon after the filing of the Complaint to address the possible risk of immediate harm to potentially affected individuals and their families, and in light of the allegations, negotiated and implemented a program to address any potential immediate needs of Settlement Class Members (the "Immediate Relief Program"). This Immediate Relief Program provided (without requiring any legal release of claims by any Aetna member, and without any admission by Aetna and regardless of fault or wrongdoing): (1) up to three counseling sessions, with an opportunity to request additional sessions, for Settlement Class Members and their families, paid in full by Aetna upon proof by the claimant of need and potential causal relationship to the Incident defined below; and (2) cash reimbursements by Aetna for verifiable emergency out-of-pocket costs claimed to have been incurred by Settlement Class Members as a result of the Incident defined below. This Immediate Relief Program was first publicized on September 28, 2017 and has been in place since then. The Parties have agreed that the Immediate Relief Program will remain in place until the Effective Date of this Settlement.

D.      On August 28, 2017, *S.A. v. Aetna, Inc.,* No. BC674088 (Cal. Super. Ct. L.A. Cty., Aug. 28, 2017) ("*S.A.*") was filed in Los Angeles County Superior Court, and was the first lawsuit filed in California and the second lawsuit filed overall regarding the Incident defined below after *Beckett*, which was filed earlier the same day. Aetna subsequently removed *S.A.* to the United States District Court for the Central District of California, and on October 4, 2017, pursuant to the parties' stipulation, the Central District of California transferred *S.A.* to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a), and it was thereafter consolidated with *Beckett* for all purposes pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. Counsel for S.A. also participated with Co-Lead Class Counsel in the ADR process and mediation that led to this Settlement Agreement.

E.      On October 7, 2017 and October 25, 2017, Co-Lead Class Counsel and Counsel for S.A., on behalf of their clients and the putative class, and Aetna and its counsel,

2

participated in two in-person full-day mediation sessions to determine whether the claims arising from the Incident defined below could be resolved. They appeared before an experienced mediator, Retired U.S. Magistrate Judge Diane Welsh, who previously served for eleven years as a Magistrate Judge in the United States District Court for the Eastern District of Pennsylvania ("Judge Welsh"). Prior to and during the mediation process overseen by Judge Welsh, Aetna produced documents and information requested by Co-Lead Class Counsel to ensure that any potential settlement would be informed by relevant discovery and based on an adequate factual record. In addition, Co-Lead Class Counsel continued to conduct their own independent factual and legal investigation of the case.

   F. Aetna's production of documents and information to Co-Lead Class Counsel for purposes of the mediation included, for example: (1) documents regarding the underlying litigation and settlement that led to the Incident defined below; (2) documents and data identifying the size and geographic location of all Settlement Class Members; (3) documents evidencing Aetna's policies and procedures regarding printing/mailing Protected Health Information as defined below; (4) documents regarding the Incident defined below; (5) communications between Aetna and governmental regulators regarding the Incident defined below; (6) documents sufficient to identify relevant parties who were involved in and affected by the Incident defined below; and (7) documents evidencing the timeline on which the Incident defined below occurred.

   G. Following the mediation sessions that took place on October 7, 2017 and October 25, 2017, Plaintiffs Beckett and S.A., through their counsel, and Aetna, through its counsel, continued to engage in arm's-length settlement negotiations under the direction and supervision of Judge Welsh regarding the terms and conditions of this Settlement Agreement. On January 16, 2018, the Parties finalized and executed this Settlement Agreement.

   H. On December 5, 2017, Plaintiffs filed an Amended Class Action Complaint ("Amended Complaint") in *Beckett* alleging numerous causes of action by 37 named plaintiffs who reside in 28 different states plus the District of Columbia, represented by Co-Lead Class Counsel.

   I. Aetna does not admit that it is liable to Plaintiffs and the Settlement Class for the claims, damages, financial harm, non-financial harm, causes of action, costs, expenses, and attorneys' fees asserted in the Amended Complaint and/or related in any way to the Incident, as defined below, denies all allegations by Plaintiffs and further states that it would assert substantial legal and factual defenses against Plaintiffs' claims if they were litigated to conclusion. Nonetheless, Aetna has concluded, in light of the costs, risks and burden of litigation, that this Settlement Agreement is appropriate. Aetna agrees that this Settlement Agreement is a fair, reasonable and adequate resolution of all Released Claims against all Released Parties. Aetna reached this conclusion after considering the factual and legal issues relating to the litigation, the substantial benefits of this Settlement Agreement, the expense that would be necessary to defend the claims asserted by Plaintiffs and the Settlement Class Members through trial and any appeals that might be taken, the benefits of resolving protracted and complex litigation, Aetna's continuing rights of contribution, subrogation, contractual or equitable indemnity, and/or reimbursement against persons or entities not parties to this

Settlement Agreement, and the desire of Aetna to conduct its business unhampered by the costs, distraction and risks of continued litigation over the Released Claims.

J.      Plaintiffs, through their undersigned counsel, represent that they have made a thorough and independent investigation of the facts and law relating to the allegations in the Amended Complaint, which includes, without limitation: (1) interviews by Co-Lead Class Counsel of over 260 Settlement Class Members who contacted Co-Lead Class Counsel after the filing of the Complaint in *Beckett*; (2) the review and analysis by Co-Lead Class Counsel of the documents, data and information produced by Aetna as part of the mediation process; and (3) extensive factual investigation and legal research by Co-Lead Class Counsel with respect to the asserted claims and defenses. After careful consideration, Plaintiffs and their undersigned counsel represent that they have concluded that it is in the best interests of the Settlement Class to settle the Released Claims against the Released Parties for the consideration set forth in this Settlement Agreement, and this Settlement Agreement is the result of arm's-length negotiations including the mediation process overseen by Judge Welsh. As a result of this process, Plaintiffs represent that they have considered, among other things: (1) the complexity, expense and likely duration of the litigation if it was litigated through trial and appeals; (2) the stage of the litigation and amount of fact gathering completed; (3) Aetna's factual and legal arguments and defenses and the potential for Aetna to prevail on the merits with respect to class certification, liability and/or damages; and (4) the range of possible recovery, and have determined that the proposed resolution of Plaintiffs' individual and class action claims as set forth in this Settlement Agreement is fair, reasonable and adequate, and in the best interests of Plaintiffs and the Settlement Class.

K.      The Parties desire to settle, compromise and resolve fully all Released Claims, and to seek the Court's review and approval of the Settlement Agreement, which is required pursuant to Rule 23 of the Federal Rules of Civil Procedure;

NOW, THEREFORE, the foregoing recitals are expressly incorporated into this Settlement Agreement, and in consideration of the agreements set forth in this Settlement Agreement, this individual and class action litigation shall be settled and compromised under the following terms and conditions as set forth in detail below.

## SECTION 1
## DEFINITIONS

1.1     The following terms used in this Settlement Agreement shall have the meanings ascribed to them below for purposes of this Settlement Agreement:

A.      "Aetna" means Defendants Aetna Inc., Aetna Life Insurance Company and Aetna Specialty Pharmacy, LLC.

B.      "Aetna Released Parties" means Aetna, individually and collectively, and each of their respective successors, assigns, past, present, and future parents, subsidiaries, sister companies, joint venturers, partnerships, related companies, affiliates, unincorporated entities, divisions and groups, directors, officers, shareholders, employees, agents, representatives, insurers, servants, partners, administrators and subcontractors.  In no event, however, shall the

terms "Aetna" or "Aetna Released Parties" be construed to include Kurtzman Carson Consultants LLC ("KCC"), the KCC Released Parties, Gibson, Dunn & Crutcher LLP ("GDC"), the GDC Released Parties, Whatley Drake & Kallas ("WDK"), the WDK Released Parties, Consumer Watchdog ("CW"), or the CW Released Parties, each of which is defined below.

C.    "Amended Complaint" means Plaintiffs' Amended Class Action Complaint filed in *Beckett* on December 5, 2017.

D.    "Base Payment" means the automatic net payments to Settlement Class Members as set forth in Exhibits A and C attached hereto. All Settlement Class Members shall automatically receive the applicable Base Payment amount without submitting a Claim Form. All Base Payments shall be drawn from the Net Settlement Fund.

E.    "Benefit Notice" means the notice that was sent by a settlement administrator to certain Settlement Class Members to inform Aetna members of their ability to fill prescriptions for HIV medications through mail order or retail pharmacy, as part of a settlement of legal claims that had been filed against certain Aetna-related entities or affiliates in *Doe v. Aetna, Inc.*, No. 14-cv-2986 (S.D. Cal.).

F.    "CAFA Notice" means the notice to be sent by Aetna to appropriate federal and state officials pursuant to the requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) ("CAFA"), within ten (10) business days after the submission of this Settlement Agreement to the Court.  A copy of the served CAFA Notice shall be provided to Co-Lead Class Counsel.

G.    "Claimant" means a Settlement Class Member who submits a Claim Form.

H.    "Claimant Award" means the amount of money that is paid by the Settlement Administrator out of the available Net Settlement Fund to each Claimant who submits a valid and timely Claim Form.

I.    "Claim Form" means the Claim Form attached as Exhibit A hereto that only Settlement Class Members who were sent the Benefit Notice may use to request a Claimant Award.

J.    "Claim Package" means the Claim Form and any required documentation as requested by the Claim Form.

K.    "Claim Period" shall mean the time period of 120 days after the date that notice of this Settlement is issued by the Settlement Administrator to submit a Claim Form.

L.    "Class Representatives" or "Plaintiffs" mean Andrew Beckett, Arizona Doe, California Doe, S.A., Colorado Doe, Connecticut Doe, DC Doe, Florida Doe, Georgia Doe, Illinois Doe, Indiana Doe, Kansas Doe, Maine Doe, Maryland Doe, Minnesota Doe, Mississippi Doe, Missouri Doe, Nevada Doe, NewHampshire Doe, NewJersey Doe, NewMexico Doe, NewYork Doe1, NewYork Doe2, NewYork Doe3, NewYork Doe4, NorthCarolina Doe, Ohio

5

Doe, Oklahoma Doe, SouthCarolina Doe, Tennessee Doe, Texas Doe, Virginia Doe, Washington Doe, John Doe, Jane Doe2, John Doe1, and John Doe2.

M.     "Co-Lead Class Counsel" means Shanon Carson, E. Michelle Drake and Sarah R. Schalman-Bergen of Berger & Montague; Ronda B. Goldfein of AIDS Law Project; and Sally Friedman of LAC, and "Counsel for S.A." means Torin A. Dorros of Dorros Law.

N.     "Complaint" means the original Complaint filed by Plaintiff Andrew Beckett on August 28, 2017 in *Beckett v. Aetna, Inc., et al.*, No. 2:17-cv-03864-JS (E.D. Pa.).

O.     "Confidential HIV-related information" means any information which concerns whether an individual has been the subject of an HIV-related test, has HIV, HIV-related illness or AIDS; or any information which identifies or reasonably could identify an individual as having one or more conditions, including information pertaining to the individual's contacts as defined in Pennsylvania's Confidentiality of HIV-Related Information Act, 35 P.S. § 7601. This definition is without waiver or admission of any interpretation of applicable federal or state law.

P.     "Counsel for Aetna" means Matthew P. Kanny and Donna L. Wilson of Manatt, Phelps & Phillips, LLP, and Frederick P. Santarelli of Elliott Greenleaf, P.C.

Q.     "Court" means the United States District Court for the Eastern District of Pennsylvania.

R.     "CW" means Consumer Watchdog, one of the law firms that represented the plaintiffs in the *Doe* lawsuits.

S.     "CW Released Parties" means CW and each of its respective successors, assigns, past, present, and future parents, subsidiaries, sister companies, joint venturers, partnerships, related companies, affiliates, unincorporated entities, divisions and groups, directors, officers, shareholders, employees, agents, representatives, insurers, servants, partners, administrators and subcontractors.

T.     "Effective Date" means (i) the day following the expiration of the deadline for appealing the entry by the Court of the Final Approval Order and Judgment approving the Settlement Agreement, if no appeal is filed; or (ii) if an appeal of the Final Approval Order and Judgment is filed, the date upon which all appellate courts with jurisdiction affirm such Final Approval Order and Judgment, or deny any such appeal or petition for certiorari, such that no future appeal is possible.

U.     "Final Approval Hearing" means the hearing scheduled by the Court to consider the fairness, reasonableness and adequacy of this Settlement Agreement under Rule 23 of the Federal Rules of Civil Procedure, and to determine whether a Final Approval Order and Judgment should be entered.

V.     "Final Approval Date" means the date on which the Court enters the Final Approval Order and Judgment.

W.      "Final Approval Order" means the Final Approval Order and Judgment entered by the Court.

X.      "GDC" means Gibson, Dunn & Crutcher, LLP, which Plaintiffs allege in their Amended Complaint represented Aetna and certain Aetna-related entities or affiliates in the *Doe* lawsuits.

Y.      "GDC Released Parties" means GDC and each of its respective successors, assigns, past, present, and future parents, subsidiaries, sister companies, joint venturers, partnerships, related companies, affiliates, unincorporated entities, divisions and groups, directors, officers, shareholders, employees, agents, representatives, insurers, servants, partners, administrators and subcontractors.

Z.      "HIPAA" means the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996) (codified as amended in scattered sections of 42 U.S.C.) and the implementing regulations issued by the U.S. Department of Health and Human Services thereunder, and incorporates by reference the provisions of the Health Information Technology for Economic and Clinical Health Act (Title XIII of Division A and Title IV of Division B of the American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5 (2009)) pertaining to Protected Health Information.

AA.     "KCC" means Kurtzman Carson Consultants LLC and/or its affiliates, which Plaintiffs allege in their Amended Complaint acted as the settlement administrator in the *Doe* lawsuits that mailed the notices as required by the settlement of the *Doe* lawsuits, including, without limitation, the Benefit Notice.

BB.     "KCC Released Parties" means KCC, KCC Class Action Services, LLC, Computershare, Inc., Computershare Limited, Computershare Communications Services, and each of their respective successors, assigns, past, present and future parents, subsidiaries, sister companies, joint venturers, partnerships, related companies, affiliates, unincorporated entities, divisions and groups, directors, officers, shareholders, employees, agents, representatives, insurers, servants, partners, administrators and subcontractors.

CC.     "Incident" means the alleged improper disclosure of Plaintiffs' and the Settlement Class Members' Protected Health Information and/or Confidential HIV-Related Information by Aetna and/or Aetna-related or affiliated entities, or on their behalf, to third parties, including GDC and KCC, and/or in connection with the mailing of notices to Settlement Class Members as required by the settlement in the *Doe* lawsuits.

DD.     "Net Settlement Fund" means the amount of money remaining in the Settlement Fund after it is reduced by the following amounts as approved by the Court in its Final Approval Order: (1) any service awards to the Class Representatives; (2) attorneys' fees and costs; and (3) fees and costs invoiced by the Settlement Administrator.

EE.     "Notice of Deficiency" means any written notice that the Settlement Administrator sends to any Claimant who submits a Claim Form or Claim Package that contains a deficiency that needs to be cured as determined by the Settlement Administrator. A form of

Notice of Deficiency to be used by the Settlement Administrator is attached hereto as Exhibit B.

FF. "Notice of Settlement" means the Notice of Class Action Settlement in the form of Exhibit C attached hereto, to be approved by the Court in its Preliminary Approval Order, which is provided by the Settlement Administrator to the Settlement Class Members to provide notice of this Settlement.

GG. "Opt Outs" mean Settlement Class Members who timely and properly exercise their right to opt out and exclude themselves from the terms of this Settlement Agreement.

HH. "Preliminary Approval Order" means the Court's Order preliminarily approving the Settlement Agreement and preliminarily certifying the Settlement Class.

II. "Protected Health Information" or "PHI" means individually identifiable health information as defined in 45 C.F.R. § 160.103.

JJ. "Released Claims" means the claims released as set forth in Section 7 below.

KK. "Released Parties" means the Aetna Released Parties and any other person or entity that is potentially responsible for causing or in any way involved in the Incident, including, without limitation, the CW Released Parties, the GDC Released Parties, the KCC Released Parties, and the WDK Released Parties.

LL. "Settlement Administrator" means Angeion Group, LLC, who will be presented by Plaintiffs to the Court for approval in the Preliminary Approval Order to perform all responsibilities assigned to the Settlement Administrator in this Settlement Agreement.

MM. "Settlement Agreement" or "Settlement" means this Settlement Agreement and its Exhibits which are incorporated herein, including any subsequent amendments and subsequent exhibits that are agreed to by the Parties in writing and approved by the Court.

NN. "Settlement Payment" means the total payment that each Settlement Class Member is entitled to receive pursuant to the terms of this Agreement as determined by the Settlement Administrator.

OO. "Settlement Class" or "Settlement Class Members" means all persons whose Protected Health Information and/or Confidential HIV-related information was allegedly disclosed improperly by Aetna and/or Aetna-related or affiliated entities, or on their behalf, to third parties, including GDC and KCC, and/or to whom any written notice was mailed as required by the settlement of the *Doe* lawsuits.

PP. "Settlement Fund" means the non-reversionary cash amount of Seventeen Million, One Hundred and Sixty One Thousand, and Two Hundred Dollars ($17,161,200.00) which shall be the total amount from which the following will be paid: (1) all Settlement

Payments to Settlement Class Members; (2) all settlement administration fees and costs that are approved by the Court; (3) all attorneys' fees and costs that are approved by the Court; and (4) all service awards to the Class Representatives that are approved by the Court. The Settlement Fund does not include costs or expenses that are required to be paid by Aetna in connection with implementing the non-monetary relief set forth in Section 5 of this Settlement Agreement. Within five (5) business days after the Court's Preliminary Approval Order and receipt by Aetna of wiring instructions to a non-reversionary common fund escrow account at a bank selected by Co-Lead Class Counsel (which shall be established and maintained by the Settlement Administrator as a Qualified Settlement Fund for federal tax purposes pursuant to Treas. Reg. § 1.468B-1) and a W-9 from the Settlement Administrator, whichever is later, Aetna shall wire the Settlement Fund into such escrow account. The Settlement Administrator shall be responsible for all administrative, accounting and tax compliance activities in connection with the Qualified Settlement Fund, including any filings necessary to obtain Qualified Settlement Fund status pursuant to Treas. Reg. § 1.468B-1. Aetna shall provide to the Settlement Administrator any documentation necessary to facilitate obtaining Qualified Settlement Fund status.

QQ.    "Settlement Website" means the website regarding this Settlement that will be established by the Settlement Administrator following issuance by the Court of its Preliminary Approval Order. The Settlement Website shall not reveal any PHI or Confidential HIV-related information belonging to any person to the public.

RR.    "WDK" means Whatley Drake and Kallas, one of the law firms that represented plaintiffs in the *Doe* lawsuits.

SS.    "WDK Released Parties" means WDK and its respective successors, assigns, past, present and future parents, subsidiaries, sister companies, joint venturers, partnerships, related companies, affiliates, unincorporated entities, divisions and groups, directors, officers, shareholders, employees, agents, representatives, insurers, servants, partners, administrators and subcontractors.

## SECTION 2
## BENEFITS FOR SETTLEMENT CLASS MEMBERS

2.1    <u>Monetary Consideration</u>. In consideration of the Releases set forth in Section 7 below, Aetna shall pay, as set forth in Paragraph 1.1(PP) and as further described in Section 4.1 below, the non-reversionary cash amount of $17,161,200.00 into the Settlement Fund, to be distributed as proposed by Plaintiffs and approved by the Court in its Final Approval Order.

2.2    <u>Non-Monetary Consideration</u>. In consideration of the Releases set forth in Section 7 below, Aetna agrees to take the actions set forth in Section 5 below.

## SECTION 3
## SETTLEMENT ADMINISTRATOR AND
## NOTICE TO SETTLEMENT CLASS MEMBERS

3.1    <u>Appointment of Settlement Administrator and Protection of Class List</u>

3.1.1    Plaintiffs' Motion for Preliminary Approval will recommend the appointment of Angeion Group, LLC by the Court to act as the Court-appointed independent Settlement Administrator and to implement all settlement administration tasks and duties set forth in this Settlement Agreement.

3.1.2    The Settlement Administrator shall perform all tasks and duties ascribed to it in this Settlement Agreement and as the Court may direct. The Settlement Administrator shall prepare and submit written status reports and declarations to Co-Lead Class Counsel and/or Counsel for Aetna at any time upon written request.

3.1.3    The term "Class List" means the list of names and contact information of the Settlement Class Members. After the Settlement Administrator is appointed by the Court and agrees to be bound by a Qualified Protective Order approved by the Court -- which may be contained in the Preliminary Approval Order -- and within ten (10) business days following the issuance of the Court's Preliminary Approval Order, which shall require Aetna to produce the Class List to the Settlement Administrator in this case solely for the purposes of administering this Settlement, Aetna will cause the Class List to be delivered to the Settlement Administrator in the manner directed by the Preliminary Approval Order.

3.1.4    At no time shall the Settlement Administrator share the Class List or any information contained on the Class List, or any PHI, or any Confidential HIV-related information, with the Court, Co-Lead Class Counsel, Counsel for any Plaintiff, Counsel for Aetna, or any other person or entity, without a Court Order or an HIV-specific authorization form that is signed by the Settlement Class Member whose information is to be disclosed (or by someone with legal authorization to sign on their behalf), except that the Settlement Administrator shall comply with any federal and state tax laws and required reporting and withholding with respect to this Settlement, and Aetna shall have no obligations relating to such matters.

3.2    Settlement Administrator Fees and Costs. The reasonable fees and costs of the Settlement Administrator incurred in administering this Settlement and that are approved by the Court in its Final Approval Order will be paid out of the Settlement Fund. The Settlement Administrator shall include a Declaration as part of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement that shall set forth an estimate and a "not to exceed" price for performing all tasks and duties regarding this Settlement. The Settlement Administrator's subsequent invoices shall be filed with and approved by the Court.

3.3    Settlement Website. Within twenty-one (21) days after the Preliminary Approval Order, the Settlement Administrator will cause to be established and maintained a public informational Settlement Website containing relevant information about the Settlement, including, without limitation, downloadable .pdf copies of the Amended Complaint, this Settlement Agreement and its Exhibits, the Notice of Settlement, the Claim Form, the Preliminary Approval Order, the Final Approval Order, and other case documents relevant to the Settlement, as well as a "Frequently Asked Questions" webpage. A draft of the Settlement Website shall be reviewed and approved by Co-Lead Class Counsel before it is made available to the public. The Settlement Website shall be owned and operated by the Settlement

Administrator. The Settlement Administrator will post relevant information about the Settlement on the Settlement Website, including, as it becomes available, information about deadlines and methods to participate, and Claim Package requirements. Claim Forms and Claim Packages may be submitted to the Settlement Administrator via the Settlement Website in a secure and private fashion that is HIPAA-compliant and using Share File, a HIPAA-compliant file transfer tool, or a suitable alternative.

      3.4    <u>Automated Telephone System</u>. Within twenty-one (21) days after the Preliminary Approval Order, the Settlement Administrator will cause to be established and maintained an automated telephone system using a toll-free number to provide information about the Settlement to Settlement Class Members, utilizing an IVR script approved by Co-Lead Class Counsel. The automated telephone system shall be operated by the Settlement Administrator. The automated telephone system shall permit Settlement Class Members to request and obtain copies of the Settlement Agreement, Notice of Settlement and Claim Form, and shall also provide the opportunity for Settlement Class Members to speak with a live operator during business hours for further information.

      3.5    <u>De-identified Information</u>. The Settlement Administrator shall develop a unique number identifier system so it can communicate with and about Settlement Class Members without including or identifying any PHI or Confidential HIV-related information or identifying their names, addresses or other identifying information belonging to any Settlement Class Member. All Parties and all Counsel shall cooperate in good faith to respect the privacy and confidentiality of all Settlement Class Members' PHI and Confidential HIV-related information.

      3.6    <u>Notice of Settlement to Settlement Class Members</u>. As part of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Plaintiffs shall submit to the Court for its approval a declaration by the proposed Settlement Administrator that details the various methods that will be used to provide notice of the Settlement to the Settlement Class Members. The notice shall include sending the Notice of Class Action Settlement attached hereto as Exhibit C by U.S. first class mail to all Settlement Class Members using practices intended to maintain the confidentiality of Settlement Class Members' PHI and Confidential HIV-related information, including, without limitation:

      (a)    by using an opaque envelope of appropriate and sufficient stock and with no transparent window so as to obscure the contents of the envelope;

      (b)    by using a return address on the outside of the envelope with no identifying information other than a P.O. Box, City, State and Zip Code;

      (c)    by including a statement on the front of the envelope stating that it contains "Confidential Legal Information – To Be Opened Only By The Addressee";

      (d)    by using a protective cover page that folds around the Notice of Class Action Settlement and that identifies that the information being provided therein is confidential and solely for reading by the Settlement Class Member; and

(e)      by using paper stock that will protect the confidentiality of the contents of the envelope from being read through the envelope.

3.7      Other Notice Requirements. Prior to mailing the Notice of Class Action Settlement, the Settlement Administrator shall process the information in the Class List through the U.S. Postal Service's National Change of Address database. The notice being provided to Settlement Class Members shall be designed to meet the requirements of Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure and shall include: (a) direct notice by U.S. first-class mail as set forth above; (b) notice through the Settlement Website and the automated telephone system as set forth above; (c) the issuance of press releases by both Aetna and Co-Lead Class Counsel on the day after the Motion for Preliminary Approval of Class Action Settlement is filed; and (d) an announcement to be included on the webpages dedicated to this litigation that are already maintained by each of Co-Lead Class Counsel.

3.8      Compliance with all Regulatory and Other Requirements. The Class List delivered by Aetna to the Settlement Administrator pursuant to Section 3.1.3 of this Settlement Agreement and as ordered by the Court and any completed Claim Forms, Claim Packages, or other information submitted by Claimants to the Settlement Administrator, will be recorded by the Settlement Administrator in a computerized database that will be securely and confidentially maintained by the Settlement Administrator in accordance with HIPAA and all other applicable federal, state and local laws, regulations and guidelines, including, without limitation, any laws concerning heightened privacy for HIV-related information. The Settlement Administrator must: (a) designate specifically-assigned employees to handle its administration of this Settlement; (b) train them concerning their legal duties and obligations arising out of this Settlement with respect to the information that they are provided; (c) ensure that all of the information it receives is used properly in accordance with HIPAA and all other applicable federal, state and local laws and solely for the purpose of administering this Settlement; and (d) ensure that an orderly system of data management and maintenance is adopted and implemented, and that the information is retained under responsible custody until the conclusion of this litigation, at which time all of the information and data shall be destroyed by the Settlement Administrator upon a written certification to be filed with the Court. The Settlement Administrator will keep the database in a form that grants access for settlement administration use only, and shall restrict access rights only to the least possible number of employees of the Settlement Administrator who are working directly on the administration of this Settlement. The Settlement Administrator shall notify the Court, Co-Lead Class Counsel, and Counsel for Aetna in writing if there is any breach of applicable privacy laws in any respect.

3.9      Access to the Class List and Related Information. Only the Settlement Administrator shall have access to the Class List, Claim Forms, Claim Packages, and other information submitted by Settlement Class Members. All information submitted by Settlement Class Members to the Settlement Administrator will be treated as highly confidential pursuant to the Court's Preliminary Approval Order and applicable protective orders, and the Settlement Administrator shall not share any such information with Co-Lead Class Counsel, Counsel for any Plaintiff, Aetna, Aetna's counsel, or any other person, except upon an Order of the Court or an HIV-specific authorization form that is signed by the Settlement Class Member whose information is to be disclosed (or by someone with legal authorization to sign on their behalf).

**SECTION 4**
**MONETARY PAYMENTS FOR SETTLEMENT CLASS MEMBERS**
**AND DISTRIBUTION OF NET SETTLEMENT FUND**

4.1 <u>Monetary Consideration</u>. As set forth above in Paragraph 1.1(PP) and Section 2.1, Aetna shall pay, without any contribution or consideration being provided from any non-parties to this Settlement Agreement, and specifically reserving all rights to seek contribution, subrogation, reimbursement, contractual or equitable indemnity and/or consideration against such non-parties, the non-reversionary cash amount of $17,161,200.00 into the Settlement Fund, to be distributed in accordance with the Court's Final Approval Order. This amount is intended to fully and completely compensate the Settlement Class Members for all Released Claims against all Released Parties, while at the same time preserving Aetna's and/or Aetna Released Parties' rights to pursue all claims, including for contribution, subrogation, reimbursement and/or contractual or equitable indemnity, against all non-parties to this Settlement Agreement, including the CW Released Parties, the GDC Released Parties, the KCC Released Parties, and the WDK Released Parties. The Parties agree that Aetna will provide the Settlement Administrator with an IRS Form 1099 for the lump sum payment made pursuant to this Settlement Agreement. Aetna makes no representation as to the tax treatment of any payment(s) made pursuant to this Settlement Agreement.

4.2 <u>Allocation and Distribution of Net Settlement Fund.</u> Aetna has not and will not play any role in the allocation and/or distribution of the Net Settlement Fund. The allocation and distribution of the Net Settlement Fund will be proposed by Plaintiffs for the Court's approval in the form set forth in Exhibit A (Claim Form), Exhibit C (Notice of Settlement), and Exhibit D (Claimant Payment Formula), and which shall be further described in Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

4.3 <u>Mailing of Settlement Payments</u>. The Settlement Administrator will mail by U.S. first class mail all Settlement Payments to Settlement Class Members no later than forty-five (45) days after the Effective Date.

4.4 <u>Money Remaining In Net Settlement Fund After Processing of Claim Forms</u>. If there is money remaining in the Net Settlement Fund after deducting the minimum Base Payments for all Settlement Class Members and all Claimant Awards, the remaining money shall be distributed *pro rata* to all Settlement Class Members who were sent the Benefit Notice, and shall have the effect of raising the Base Payment Amount for these individuals.

4.5 <u>Review and Processing of Claim Forms and Claim Packages</u>. Within thirty (30) days after receiving a Claim Form or Claim Package from a Claimant, the Settlement Administrator shall determine the sufficiency and completeness of the required contents. The Settlement Administrator shall reject a Claim Form or Claim Package if it does not include all required content, subject to the cure provisions set forth below.

4.6 <u>Deficiencies and Cure</u>. For any rejected Claim Forms or Claim Packages, the

Settlement Administrator shall send a Notice of Deficiency to the Settlement Class Member that contains a brief explanation of the deficiency(ies) at issue, and will, where necessary, request the additional information and/or documentation. The Notice of Deficiency will be sent no later than thirty (30) days from the date of receipt of the Claim Form or Claim Package by the Settlement Administrator. The Notice of Deficiency will provide that the deficiency must be cured within thirty (30) days from the date of mailing of the Notice of Deficiency. Any Claim Form or Claim Package that is not timely cured will be denied by the Settlement Administrator in writing. If the deficiency is later cured before such time as the Settlement Administrator determines and calculates all Claimant Awards, then the Settlement Administrator shall accept the cure.

      4.7    <u>Use of Settlement Fund Prior to the Effective Date</u>. Prior to the Effective Date, the only monies that may be distributed from the Settlement Fund are the reasonable fees and costs of the Settlement Administrator as approved by the Court. If the Settlement does not become final and effective for any reason, then all monies in the Settlement Fund shall be returned to Aetna except for any amounts reasonably billed by the Settlement Administrator, which shall be Aetna's responsibility.

      4.8    <u>Check Cashing</u>. All settlement checks to Settlement Class Members will remain negotiable for 180 days from the date they are issued, and shall be accompanied by the cover letter attached hereto as Exhibit E when they are mailed by the Settlement Administrator. They shall be mailed using the same protections and mailing procedures as set forth in Paragraph 3.6 above. At any point in the check-cashing period, the Settlement Administrator shall have the authority to stop payment on a lost check and issue a new check to an eligible Settlement Class Member upon reasonable request, and after the Settlement Class Member has executed and sent to the Settlement Administrator an affidavit or declaration of lost check.

      4.9    <u>Remaining Funds from Uncashed Checks</u>. Thirty (30) days following the close of the 180 day check negotiation period, the Settlement Administrator shall distribute any remaining amounts in the Net Settlement Fund, which are anticipated to only be monies from uncashed checks, subject to the approval of the Court, to an appropriate *cy pres* recipient, the AIDS Coordinating Committee of the American Bar Association ("the Committee"). The Committee shall use an RFP process to redistribute any funds it receives to nonprofit public-interest law firms working on HIV-related privacy issues. Neither the AIDS Law Project of Pennsylvania nor the Legal Action Center will submit a funding request through this RFP process.

## SECTION 5
## NON-MONETARY RELIEF

      5.1    Aetna agrees to take the following actions:

      A.    Develop and implement a "best practices" policy (the "Policy") for use of PHI in litigation, consistent with Exhibit F attached hereto, by no later than thirty (30) days after the Final Approval Order. Aetna may change the Policy in its discretion based on new legal or regulatory requirements and/or other factors that are designed to ensure or improve compliance with applicable privacy laws and regulations. For a period of five (5) years from the Effective Date, Aetna will provide any updates to the Policy pursuant to this Paragraph to Co-

Lead Class Counsel.

        B.     Communicate the Policy to Aetna in-house and outside counsel in all existing litigation matters, by no later than sixty (60) days after the Final Approval Order.

        C.     Implement procedures, by no later than sixty (60) days after the Final Approval Order, to ensure that the Policy is clearly communicated to in-house and outside counsel on all new litigation matters.

        D.     Provide training regarding the Policy and Aetna's requirements under HIPAA and applicable federal and state privacy laws as appropriate to all Aetna in-house counsel whose primary responsibility is to manage litigation involving Aetna, by no later than 120 days after the Final Approval Order. For a period of five (5) years from the Final Approval Order, Aetna agrees to engage in annual training of the Policy and Aetna's requirements under HIPAA and applicable federal and state privacy laws as appropriate to all Aetna in-house counsel whose primary responsibility is to manage litigation involving Aetna.

        E.     Conduct an audit of all outside counsel handling Aetna litigation matters to ensure that such counsel has executed an Aetna-approved Business Associates Agreement ("BAA") with Aetna, by no later than 120 days from Final Approval Order.

        5.2     Aetna further agrees to maintain records sufficient to establish compliance with all of the above for a period of seven (7) years from the Final Approval Order. Any action by Aetna determined in good faith to be reasonably necessary to comply with any federal, state, or local law, enactment, regulation, or judicial ruling shall not constitute a breach of this Settlement Agreement. In the event that any obligation that Aetna has agreed to undertake becomes inconsistent with any future federal, state, or local law, enactment, regulation, or judicial ruling, then Aetna shall be released from performing such obligation after providing written notice to the Court and Co-Lead Class Counsel.

        5.3     Aetna estimates that it will expend substantial additional resources in time and costs to implement all of the actions described in this Section, which amount shall not come out of or reduce the Settlement Fund, but is additional consideration that is being provided by Aetna to the Settlement Class pursuant to this Settlement Agreement.

        5.4     The Parties agree that the failure by Aetna to comply with any terms set forth in Section 5 of this Agreement shall not be a cause to rescind the Agreement or affect the validity of the Released Claims, and that the remedy for failure to comply with the terms of Section 5 is specific performance.

## SECTION 6
## PRELIMINARY APPROVAL, FINAL APPROVAL, OPT-OUTS, AND OBJECTIONS

        6.1     <u>Filing of Motion for Preliminary Approval</u>. As soon as this Settlement Agreement is executed, Co-Lead Class Counsel shall file a Motion for Preliminary Approval of Class Action Settlement, which shall include a copy of this Settlement Agreement and its Exhibits. The Motion shall request that the Court schedule a Final Approval Hearing approximately forty-five

(45) days after the conclusion of the Claim Period.

6.2     CAFA Notice. Aetna shall send an appropriate CAFA Notice within ten (10) business days after the submission of this Settlement Agreement to the Court.

6.3     Stay of Proceedings and Injunction. The Parties agree to jointly request that the Preliminary Approval Order stay *Beckett* and any consolidated and/or other proceedings arising from any of the same facts that are asserted in Plaintiffs' Amended Complaint during the pendency of the Court's approval process regarding this Settlement Agreement, and enjoin all Settlement Class Members during that time period from filing, commencing, prosecuting, intervening in, participating in and/or maintaining, as plaintiffs, claimants, or class members in any other lawsuit, in any jurisdiction (whether state, federal or otherwise), against the Released Parties based on, relating to, or arising out of the claims and causes of action, the Incident, or the facts and circumstances at issue in the Amended Complaint, except that any individuals may move the Court at any time for an Order that they are an "opt out" pursuant to Paragraph 6.6 below so that they can proceed on an individual basis with their own individual litigation. If a stay and/or injunction is not issued by the Court, and other class action proceedings are permitted to proceed, Co-Lead Class Counsel agrees to cooperate in good faith with Aetna in taking reasonable actions requested by Aetna to transfer or stay such proceedings during the pendency of the Court's approval process regarding this Settlement Agreement that are not inconsistent with Co-Lead Class Counsel's duties to the Settlement Class.

6.4     Stipulation to Certification of Settlement Class. The Parties stipulate and agree to certification of the Settlement Class as against Aetna pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The Parties agree that this stipulation is for settlement purposes only. The Parties do not waive or concede any position or arguments they have for or against certification of any class for any other purpose in any action or proceeding. The Parties agree that the Court's certification of the Settlement Class for purposes of this Settlement does not constitute an admission by Aetna that the claims of the Settlement Class would be appropriate for class treatment if the claims were contested in this or any other forum.

6.5     Tolling of Statutes of Limitation. Upon the date of this Settlement Agreement, the statutes of limitation applicable to any and all claims or causes of action that have been or could be asserted by or on behalf of any Plaintiffs or any Settlement Class Members against Aetna or any other potentially liable parties related to the Incident or the subject matter of the Settlement Agreement shall be tolled and stayed to the extent not already tolled by the initiation of this litigation or any related class action lawsuit. The limitations period will not begin to run again for any Settlement Class Member unless and until he or she is deemed to have opted out of the Settlement Class, or this Settlement Agreement is terminated by Aetna pursuant to Paragraph 6.6 below, in which event, to the extent not otherwise tolled, the limitations period for each Settlement Class Member as to whom the limitations period had not expired as of the date of this Settlement Agreement will extend for the number of days between the date of this Settlement Agreement and the date of the Order terminating the Settlement.

6.6     Opt Outs. The Notice of Settlement attached hereto as Exhibit C provides detailed instructions to Settlement Class Members regarding the procedures that must be followed to opt out of the Settlement Class pursuant to Rule 23(c)(2)(B)(v) of the Federal Rules

of Civil Procedure. To validly request exclusion from the Settlement Class, a Settlement Class Member must submit a written request to opt out to the Settlement Administrator stating "I wish to exclude myself from the Settlement Class in *Beckett v. Aetna, Inc., et al.*, No. 2:17-cv-03864-JS (E.D. Pa.) (or substantially similar clear and unambiguous language), no later than sixty (60) days after the Notice of Settlement is mailed to Settlement Class Members by the Settlement Administrator. That written request shall contain the Settlement Class Member's printed name, address, telephone number, email address, and date of birth. A written request for exclusion must contain the actual written signature of the Settlement Class Member seeking to exclude himself or herself from the Settlement Class and requests for exclusion cannot be made on a group or class basis. The Settlement Administrator will provide redacted and de-identified copies of all requests for exclusion to Co-Lead Class Counsel and Counsel for Aetna as they are received, and only redacted and de-identified copies shall be filed with the Court. All Settlement Class Members who do not timely and properly request exclusion from the Settlement Class will in all respects be bound by all terms of this Settlement Agreement and the Court's Final Approval Order, and upon the Effective Date, will be entitled to all benefits described in this Settlement Agreement. Settlement Class Members who opt out can withdraw their request for exclusion before the Final Approval Hearing by submitting a written request stating their desire to revoke their request for exclusion along with their written signature. If more than two percent (2%) of all Settlement Class Members submit timely and valid opt outs, then Aetna may in its sole discretion exercise its right to void this Settlement Agreement within fourteen (14) days of the sixty day deadline for opting out as set forth above. If Aetna chooses to void the Settlement, then this Settlement Agreement will be vacated, rescinded, cancelled, and annulled, and the Parties will return to the status quo ex ante, as if they had not entered into this Settlement.

6.7   Objections. Any Settlement Class Member who does not submit a written request for exclusion may present a written objection to the Settlement explaining why he or she believes that the Settlement Agreement should not be approved by the Court as fair, reasonable and adequate. A Settlement Class Member who wishes to object to any aspect of the Settlement must submit to the Settlement Administrator a written statement of the objection no later than sixty (60) days after the Notice of Settlement is mailed to Settlement Class Members. The written statement must include a detailed statement of the Settlement Class Member's objection(s), as well as the specific reasons, if any, for each such objection, including any evidence and legal authority that the Settlement Class Member wishes to bring to the Court's attention. That written statement shall contain the Settlement Class Member's printed name, address, telephone number, and date of birth, and any other supporting papers, materials, or briefs that the Settlement Class Member wishes the Court to consider when reviewing the objection. A written objection must contain the actual written signature of the Settlement Class Member making the objection. The Settlement Administrator shall provide Co-Lead Class Counsel and Counsel for Aetna with copies of any objections as they are received. The names of any objectors who affirmatively state in writing that they wish to use a pseudonym shall be held in strict confidence by Co-Lead Class Counsel and Counsel for Aetna and shall not be disclosed on the public record without the objector's written permission.

6.8   Representation and Depositions. A Settlement Class Member may object on his or her own behalf or through an attorney, however, even if represented, the Settlement Class Member must sign the objection and all attorneys who are involved in any way asserting

17

objections on behalf of a Settlement Class Member must file a notice of appearance with the Court at the time when the objection is submitted, or as the Court may otherwise direct. Co-Lead Class Counsel and Counsel for Aetna may take the deposition of any objector prior to the Final Approval Hearing in a location convenient for the objector.

6.9     Final Approval Hearing. A Settlement Class Member (or counsel representing him or her, if any) seeking to make an appearance at the Final Approval Hearing must file with the Court, by twenty-one (21) days prior to the Final Approval Hearing, a written notice of his or her intention to appear at the Final Approval Hearing, including a statement of any evidence or exhibits that will be presented.

6.10     Motion for Final Approval and Final Approval Order. No later than fourteen (14) days prior to the Final Approval Hearing or at such other time as ordered by the Court, Plaintiffs shall file a Motion for Final Approval of Class Action Settlement to request a Final Approval Order and Judgment from the Court, the approval and entry of which shall be a condition of this Settlement Agreement, that: (1) approves the Settlement Agreement in its entirety pursuant to Rule 23(e) of the Federal Rules of Civil Procedure as fair, reasonable and adequate; (2) confirms the final certification of the Settlement Class; (3) confirms the appointments of the Class Representatives and of Co-Lead Class Counsel; (4) finds that the Notice Plan satisfied the requirements set forth in Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure; (5) permanently bars, enjoins and restrains the Releasors (and each of them) from commencing, filing, initiating, prosecuting, asserting, and/or maintaining any and all Released Claims against the Released Parties; (6) dismisses with prejudice the operative Complaints pursuant to the terms of the Settlement Agreement; (7) confirms the appointment of the Settlement Administrator; and (8) provides that the Court retains continuing and exclusive jurisdiction over the Parties, the Settlement Class and this Settlement Agreement, to interpret, implement, administer and enforce the Settlement Agreement in accordance with its terms and conditions.

## SECTION 7
## RELEASES

7.1     In consideration of the benefits provided to Settlement Class Members by Aetna as described in this Settlement Agreement, upon the Effective Date, each Settlement Class Member, on his or her own behalf and on behalf of his or her respective predecessors, successors, assigns, assignors, representatives, attorneys, agents, trustees, insurers, heirs, estates, beneficiaries, executors, administrators, and any natural, legal, or juridical person or entity to the extent he, she, or it is or will be entitled to assert any claim on behalf of any Settlement Class Member (the "Releasors"), hereby waive and release, forever discharge and hold harmless the Released Parties, and each of them, of and from any and all past, present and future claims, counterclaims, actions, rights or causes of action, liabilities, suits, demands, damages, losses, payments, judgments, debts, dues, sums of money, costs and expenses (including, without limitation, attorneys' fees and costs), accounts, bills, covenants, contracts, controversies, agreements, obligations, or promises, in law or in equity, contingent or non-contingent, known or unknown, suspected or unsuspected, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, liquidated or unliquidated, whether patent or latent, concealed or overt, direct, representative, class or individual in nature, in any forum ("Claims") that the Releasors, and each of them, had, has, or may have in the future arising out of, in any way relating to, or in

18

connection with, the Incident or the allegations, transactions, facts, matters, occurrences, representations or omissions involved, that are or could have been alleged or set forth in, referred to, or relate to the Complaint and/or Amended Complaint (collectively the "Released Claims," or the "Releases").

7.2     California Civil Code Section 1542. As of the Effective Date, Plaintiffs and each Settlement Class Member shall further be deemed to have waived and released any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code to the extent applicable or similar laws of any other state or jurisdiction.

SECTION 1542 OF THE CALIFORNIA CIVIL CODE READS:

**"CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."**

7.3     Nothing in this Settlement Agreement, including the Releases, is in any way intended to impact, discharge, release, impair, waive, include, or affect any claims, actions, causes of actions, suits, demands, rights, damages, losses or remedies that any Aetna Released Party had, has, may have, or wishes to assert against any non-party to this Settlement Agreement, including, but not limited to, any and all claims for contribution, subrogation, reimbursement and/or contractual or equitable indemnity against any individual or entity, including, without limitation, the CW Released Parties, the GDC Released Parties, the KCC Released Parties, or the WDK Released Parties.

7.4     Nothing in the Releases will preclude any action to enforce the terms of this Settlement Agreement in the Court.

7.5     The Parties represent and warrant that no promise or inducement has been offered or made for the Releases contained in this Article except as set forth in this Settlement Agreement and that the Releases are executed without reliance on any statements or any representations not contained in this Settlement Agreement.

## SECTION 8
## ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

8.1     Attorneys' Fees and Costs. Co-Lead Class Counsel will petition the Court on behalf of all entitled attorneys and law firms for a payment of attorneys' fees and reimbursement of reasonable out-of-pocket costs from the Settlement Fund no later than fourteen (14) days prior to the deadline for submitting objections. The Parties agree that the amount for attorneys' fees shall not exceed twenty-five percent (25%) of the Settlement Fund and Aetna will take no position on the petition as long as the requested amount is consistent with this paragraph. Should the Court decline to approve any requested payment, the Settlement shall remain effective. The Settlement Administrator shall wire the Court-approved attorneys' fees and costs to Berger &

Montague after the Effective Date. Aetna shall bear its own costs of litigation and attorneys' fees incurred in connection with the Action and this Settlement Agreement.

8.2     Class Representative Service Awards. In recognition of their service to the Settlement Class, Co-Lead Class Counsel may petition the Court on behalf of the Class Representatives for modest service awards in an aggregate amount not to exceed $100,000, subject to the approval of the Court, to be allocated in the discretion of Co-Lead Class Counsel based upon the Class Representatives' respective service to the Settlement Class, and to be set forth in Plaintiffs' Motion for Approval of Attorneys' Fees and Costs. Aetna will take no position on the petition as long as the requested aggregate amount is consistent with this paragraph. These amounts shall be paid at the same time as Settlement Payments are made to Settlement Class Members. Should the Court decline to approve any requested service awards, the Settlement shall remain effective.

**SECTION 9**
**MISCELLANEOUS PROVISIONS**

9.1     Continuing Jurisdiction. The Court will retain continuing and exclusive jurisdiction over the interpretation, implementation, administration, and enforcement of this Settlement Agreement. The Parties and the Settlement Class are hereby deemed to have submitted to the exclusive jurisdiction of this Court for any suit, action, proceeding, or dispute arising out of, or relating to, this Settlement Agreement.

9.2     Authority. Each of the undersigned signatories represent and warrant that they have authority to enter and sign this Settlement Agreement and fulfill its terms as set forth herein.

9.3     No Admission of Liability. It is understood and agreed that this Settlement Agreement is a compromise of disputed claims and that any consideration given is not to be construed as an admission of liability by the Parties. Aetna denies any liability and nothing in this Settlement Agreement is, or may be construed as, an admission or concession on any point of fact or law by or against any Party.

9.4     No Retaliation. Aetna agrees that it shall not retaliate against any Plaintiff, Class Representative, or Settlement Class Member in any fashion for having participated in this litigation and Settlement Agreement, including, without limitation, with respect to the provision of any health insurance benefits.

9.5     No Liability for Actions in Accordance with Agreement. Plaintiffs and Aetna, as well as Co-Lead Class Counsel, Counsel for any Plaintiff, and Counsel for Aetna, shall not be liable for any acts undertaken in conformance with this Settlement Agreement and the Court's Preliminary Approval Order and Final Approval Order.

9.6     Choice of Law. This Settlement Agreement will be interpreted and enforced in accordance with the laws of the Commonwealth of Pennsylvania, without regard to conflict of law principles.

9.7     <u>Cooperation</u>. The Parties will cooperate, assist and undertake all reasonable actions to accomplish all steps contemplated by this Settlement Agreement and to implement the Settlement Agreement on the terms and conditions provided herein. The Parties and all of their counsel agree to support the final approval and implementation of this Settlement Agreement. Neither the Parties nor their counsel, directly or indirectly, will encourage any person to object to the Settlement or assist them in doing so.

9.8     <u>Integration</u>. This Settlement Agreement and its exhibits shall constitute the entire agreement and understanding among the Parties and supersedes all prior proposals, negotiations, letters, conversations, agreements, term sheets, and understandings, whether written or oral, relating to the subject matter of this Settlement Agreement. The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, agreement, arrangement, or understanding, whether written or oral, concerning any part or all of the subject matter of this Settlement Agreement has been made or relied on except as expressly set forth in this Settlement Agreement.

9.9     <u>Severability</u>.  If any provision or any part of any provision of this Settlement Agreement is for any reason held to be invalid, unenforceable, or contrary to any public policy, law, statute, and/or ordinance, that provision may be severed from the Settlement Agreement and the remainder of the Settlement Agreement shall remain valid and enforceable as if the invalid, unenforceable, or illegal provision or part of any provision had not been contained herein.

9.10    <u>Headings</u>. The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement in any manner. Any inconsistency between the headings used in this Settlement Agreement and the text of the Settlement Agreement shall be resolved in favor of the text.

9.11    <u>Incorporation of Exhibits</u>. All of the exhibits to this Settlement Agreement are hereby incorporated by reference as though fully set forth herein. Notwithstanding the foregoing, any inconsistency between this Settlement Agreement and any exhibits hereto will be resolved in favor of this Settlement Agreement.

9.12    <u>Amendment</u>. Subject to the approval of the Court, the Parties may agree in a writing executed by Co-Lead Class Counsel and Counsel for Aetna to amend this Settlement Agreement or to modify the exhibits to this Agreement to effectuate the purpose of this Agreement or to conform to guidance from the Court about the contents of such exhibits without the need to further amend this Agreement. Any amendment modifying the Settlement must be filed with the Court and is subject to the Court's approval.

9.13    <u>Mutual Preparation</u>. The Parties have negotiated all of the terms of this Settlement Agreement at arm's-length and through a mediation process overseen by Judge Welsh. Neither the Settlement Class Members nor Aetna, nor any one of them, nor any of their counsel, will be considered to be the sole drafter of this Settlement Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Settlement Agreement. This Settlement Agreement will be deemed to have been mutually prepared by the Parties and will not

be construed against any of them by reason of authorship.

9.14   No Third Party Beneficiaries. This Settlement Agreement, once finally approved by the Court, is binding on the Parties and the Settlement Class, as well as their agents, representatives, heirs, executors, devisees, successors, transferees, assigns, and legal representatives in this matter, provided, however, that this Settlement Agreement is not binding on any pre-existing operations of any successor, assignee or transferee of Aetna's applicable business operations. No provision in this Settlement Agreement is intended to provide any rights to any third parties not signatories to this Settlement Agreement, or is intended to create any third party beneficiaries to this Settlement Agreement. Notwithstanding the preceding sentence, nothing in this Paragraph 9.14 shall affect in any way the Releases contained in Section 7 of this Settlement Agreement.

9.15   Independent Advice of Counsel. The Parties represent and declare that in executing this Settlement Agreement, each relied upon the advice and recommendations of their own independently selected counsel. Further, the Parties represent that each has had sufficient opportunity to consult with their respective attorneys about the terms and conditions of this Settlement Agreement prior to its execution. Each Party has read and fully understands the full contents and effect of this Settlement Agreement, and consciously and voluntarily contracts and agrees as provided herein.

9.16   Extensions of Time. Co-Lead Class Counsel and Counsel for Aetna may agree in writing, subject to approval of the Court where required, to reasonable extensions of time to implement the provisions of this Settlement Agreement.

9.17   Execution in Counterparts. This Settlement Agreement may be executed in counterparts, and a facsimile, emailed, or electronic signature shall be deemed an original signature for purposes of this Settlement Agreement.

9.18   Issuance of Notices. In any instance in which this Settlement Agreement requires the issuance of any notice to the Parties and/or to Co-Lead Class Counsel and Counsel for Aetna, such notice must be issued by issuing written notice to Co-Lead Class Counsel and to Counsel for Aetna as defined above.

**AGREED TO AS OF THIS** 16ᵗʰ **DAY OF JANUARY, 2018**

Shanon J. Carson (PA 85957)
Sarah R. Schalman-Bergen (PA 206211)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
scarson@bm.net
sschalman-bergen@bm.net
(215) 875-4656

E. Michelle Drake
John Albanese
BERGER & MONTAGUE, P.C.
43 SE Main Street
Suite 505
Minneapolis, MN 55414
emdrake@bm.net
jalbanese@bm.net
(612) 594-5997

Ronda B. Goldfein (PA 61452)
Yolanda French Lollis (PA 65148)
Adrian M. Lowe (PA 313614)
AIDS LAW PROJECT OF PENNSYLVANIA
1211 Chestnut Street, Suite 600
Philadelphia, PA 19107
goldfein@aidslawpa.org
alowe@aidslawpa.org
lollis@aidslawpa.org
(215) 587-9377

Sally Friedman
Monica Welby
Karla Lopez
LEGAL ACTION CENTER
225 Varick Street, Suite 402
New York, NY 10014
sfriedman@lac.org
mwelby@lac.org
klopez@lac.org
(212) 243-1313

*Co-Lead Class Counsel for Plaintiffs and the
Settlement Class*

Torin A. Dorros
DORROS LAW
8730 Wilshire Boulevard, Suite 350
Beverly Hills, California 90211
310-997-2050
tdorros@dorroslaw.com

*Counsel for Plaintiff S.A.*

Laurence D. King (SBN 206423)
Linda M. Fong (SBN 124232)
Matthew B. George (SBN 239322)
Mario M. Choi (SBN 243409)
KAPLAN FOX & KILSHEIMER LLP
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: 415-772-4700
Facsimile: 415-772-4707
lking@kaplanfox.com
lfong@kaplanfox.com
mgeorge@kaplanfox.com
mchoi@kaplanfox.com

*Counsel for Plaintiff John Doe*

Patricia M. Kipnis (PA #91470)
BAILEY & GLASSER LLP
923 Haddonfield Road Suite 300
Cherry Hill, NJ 08002
856-324-8219

Maureen M. Brady, KS bar No. 22460
MCSHANE & BRADY LLC
Lucy McShane,
1656 Washington, Suite 140
Kansas City, MO 64108
816-888-8010
fax: 816-332-6295
mbrady@mcshanebradylaw.com
lmcshane@mcshanebrady.com

Anne Schiavone KS bar No. 19669
4600 Madison, Ste. 810
Kansas City, MO 64112
816-283-8739
aschiavone@hslawllc.com

*Counsel for Plaintiff Kansas Doe*

Laurence D. King (SBN 206423)
Linda M. Fong (SBN 124232)
Matthew B. George (SBN 239322)
Mario M. Choi (SBN 243409)
KAPLAN FOX & KILSHEIMER LLP
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: 415-772-4700
Facsimile: 415-772-4707
lking@kaplanfox.com
lfong@kaplanfox.com
mgeorge@kaplanfox.com
mchoi@kaplanfox.com

*Counsel for Plaintiff John Doe*

Patricia M. Kipnis (PA #91470)
BAILEY & GLASSER LLP
923 Haddonfield Road Suite 300
Cherry Hill, NJ 08002
856-324-8219

Maureen M. Brady, KS bar No. 22460
MCSHANE & BRADY LLC
Lucy McShane,
1656 Washington, Suite 140
Kansas City, MO 64108
816-888-8010
fax: 816-332-6295
mbrady@mcshanebradylaw.com
lmcshane@mcshanebrady.com

Anne Schiavone KS bar No. 19669
4600 Madison, Ste. 810
Kansas City, MO 64112
816-283-8739
aschiavone@hslawllc.com

*Counsel for Plaintiff Kansas Doe*

24

Brian P. Murray (CT 25372)
GLANCY PRONGAY & MURRAY LLP
230 Park Avenue, Suite 530
New York, NY 10169
(212) 682-5340
bmurray@glancylaw.com

Paul C. Whalen
LAW OFFICE OF PAUL C. WHALEN, P.C.
768 Plandome Road
Manhasset, NY 11030
(516) 426-6870
paul@paulwhalen.com

Jasper D. Ward IV
JONES WARD PLC
312 S. Fourth Street
Louisville, KY 40202
(502) 882-6000
jasper@jonesward.com

John Yanchunis
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 275-5272
jyanchunis@forthepeople.com

Jean S. Martin
LAW OFFICE OF JEAN SUTTON MARTIN, PLLC
2018 Eastwood Road Suite 225
Wilmington, NC 28403
Telephone: (800) 678-6612
jean@jsmlawoffice.com

*Counsel for Plaintiffs Jane Doe2 and John Doe1*

Abbas Kazerounian, Esq. (SBN: 249203)
Mona Amini, Esq. (SBN: 296829)
KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Unit D1

25

_____

Brian P. Murray (CT 25372)
GLANCY PRONGAY & MURRAY LLP
230 Park Avenue, Suite 530
New York, NY 10169
 (212) 682-5340
bmurray@glancylaw.com

Paul C. Whalen
LAW OFFICE OF PAUL C. WHALEN, P.C.
768 Plandome Road
Manhasset, NY 11030
 (516) 426-6870
paul@paulwhalen.com

Jasper D. Ward IV
JONES WARD PLC
312 S. Fourth Street
Louisville, KY 40202
(502) 882-6000
jasper@jonesward.com

John Yanchunis
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
 (813) 275-5272
jyanchunis@forthepeople.com

Jean S. Martin
LAW OFFICE OF JEAN SUTTON MARTIN, PLLC
2018 Eastwood Road Suite 225
Wilmington, NC 28403
Telephone: (800) 678-6612
jean@jsmlawoffice.corn

*Counsel for Plaintiffs Jane Doe2 and John Doe1*

_____

Abbas Kazerounian, Esq. (SBN: 249203)
Mona Amini, Esq. (SBN: 296829)
KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Unit D1

25

Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
ak@kazlg.com
mona@kazlg.com

Joshua B. Swigart, Esq. (SBN: 225557)
HYDE & SWIGART
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022
josh@westcoastlitigation.com

THE SOLIMAN FIRM
Steven Soliman, Esq. (SBN: 285049)
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (714) 491-4111
Facsimile: (714) 491-4111
ssoliman@thesolimanfirm.com

*Counsel for Plaintiff John Doe2*

Dated: January 16, 2018

Frederick P. Santarelli
ELLIOTT GREENLEAF, P.C.
925 Harvest Drive
Suite 300
Blue Bell, PA 19422
fpsantarelli@elliottgreenleaf.com
(215) 977-1024

Matthew Kanny
Donna L. Wilson
MANNATT, PHELPS & PHILLIPS, LLP
11355 W. Olympic Blvd.
Los Angeles, CA 90064
mkanny@manatt.com
dlwilson@manatt.com
(310) 312-4225

*Attorneys for Aetna, Inc., Aetna Specialty*
*Pharmacy, LLC, and Aetna Life Insurance*
*Company*

26

# **<u>EXHIBIT A</u>**

## CLAIM FORM

**IMPORTANT -- All Settlement Class Members will automatically receive a minimum Base Payment of either: (1) $75 to all Settlement Class Members whose Protected Health Information was allegedly disclosed improperly by Aetna to Aetna's legal counsel and a settlement administrator; or (2) $500 (inclusive of the $75 dollar payment above) to all Settlement Class Members who were sent the Benefit Notice, whichever is applicable.  The "Benefit Notice" was the notice that was sent by a settlement administrator to certain Settlement Class Members to inform Aetna members of their ability to fill prescriptions for certain medications through mail order or retail pharmacy, as required by the settlement of legal claims that had been filed against certain Aetna-related entities or affiliates in *Doe v. Aetna, Inc*., No. 14-cv-2986 (S.D. Cal.).**

This Claim Form is solely for Class Members who were sent the Benefit Notice and claim to have suffered financial harm (meaning non-reimbursed out-of-pocket expenses) or non-financial harm. If you do not claim to have suffered financial harm or non-financial harm as a result of the mailing of the Benefit Notice, then you should not fill out this Claim Form.

**If you decide to fill out this Claim Form, please answer all questions honestly and accurately. You are swearing under penalty of perjury that your statements below are true and correct as if you were testifying in court.**

Part I below is your Claimant Information. Part II below covers the reimbursement of non-reimbursed out-of-pocket expenses that you claim to have incurred as a result of being sent the Benefit Notice. Part III below covers non-financial harms that you claim to have suffered as a result of being sent the Benefit Notice. Claimants can seek a monetary settlement award pursuant to this Settlement under either Part II or Part III or both.

To complete this Claim Form, you must:

> (a) completely fill out Part I -- Claimant Information;
>
> (b) completely fill out either or both of Part II -- Financial Harm, and/or Part III -- Non-Financial Harm, as applicable to you;
>
> (c) personally sign the Certification and Declaration in Part IV;
>
> (d) attach all documentation of your alleged harm as requested below; and
>
> (e) return your completed Claim Form and any requested documentation to the Settlement Administrator.

**YOU MUST SUBMIT YOUR COMPLETED CLAIM FORM BY DATE IN ORDER FOR IT TO BE CONSIDERED TIMELY.**

You may fill out this Claim Form in hard copy or you may download and fill out the electronic Claim Form located at WEBSITE. The electronic Claim Form can be uploaded using the HIPAA-compliant portal also located on the website. If you fill out the Claim Form in hard copy, you may return it by uploading it using the HIPAA-compliant portal at WEBSITE or by mail to INSERT MAIL ADDRESS.

If you have any questions about this Claim Form, please call the Settlement Administrator toll-free at xxx-xxx-xxxx or contact the Settlement Administrator using the Contact Us form located at WEBSITE. For additional information about the Settlement, please visit WEBSITE.

## PART I -- CLAIMANT INFORMATION

**Note -- All information you provide on this Claim Form will be kept strictly confidential by the Settlement Administrator and will be destroyed by the Settlement Administrator after the distribution of the settlement proceeds.**

Name of Claimant: _____

Personal Claimant Number: _____

Confirmation Code: _____
(located on the first page of the Notice of Settlement you received with this Claim Form)

**Note -- It is <u>your</u> responsibility to let the Settlement Administrator know if your mailing address changes at any time before you receive a Settlement Payment or if you want future mail sent to a different mailing address.**

Current Mailing Address: _____

Telephone: _____   Email: _____

## PART II -- FINANCIAL HARM

Please list and provide an itemization below of all non-reimbursed out-of-pocket expenses you claim were caused by the mailing of the Benefit Notice for which you are seeking reimbursement pursuant to this Settlement, and for each expense listed, **you must attach and return to the Settlement Administrator the corresponding receipt, invoice, credit card statement, medical record, insurance record, copy of returned check, or other reasonable form of evidence documenting that you made each payment listed below**. If you need more room, please continue the list on a separate sheet of paper and return it to the Settlement Administrator along with this Claim Form and the required documentation.

| Specific description of each non-reimbursed out-of-pocket expense for which you are requesting reimbursement | Date of the expense | Dollar amount of the specific expense |
|---|---|---|
|  |  |  |

| | | |
|---|---|---|
| | | |
| | | |
| | | |
| Total Amount Claimed: | | |

## **PART III – NON-FINANCIAL HARM**

If you claim to have suffered non-financial harm as a result of the mailing of the Benefit Notice, you are eligible to receive a monetary award based upon your answers to the questions below. Please carefully review and answer each question below in detail. If the question does not apply to you, please leave the answer blank or write "not applicable." Each answer you provide below is submitted under penalty of perjury as if you were testifying in court.

| **ANSWER EACH QUESTION BELOW IN DETAIL OR LEAVE IT BLANK IF IT IS NOT APPLICABLE** |
|---|
| 1.  If someone other than you received your mail the day the Benefit Notice arrived, please explain in detail the circumstances and identify the person(s) that received your Benefit Notice. |
| 2.  If your Benefit Notice was left in an area visible to others, please explain in detail the circumstances and state where the Benefit Notice was left. |
| 3.  If your Benefit Notice was delivered to a residence or post office box that was not yours, please explain in detail the circumstances including how you came to know of this. |

4. If as a result of the Benefit Notice, one or more people learned that you were taking the prescribed medication, please explain in detail the circumstances including by identifying the people who learned that you were taking the prescribed medication.

5. If as a result of the Benefit Notice, you felt forced to explain to someone for the first time about your reason(s) for taking the prescribed medication (including, for example, disclosing your sexual orientation, sexual practices, or medical condition), please explain in detail the circumstances including by identifying the person(s) that you felt forced to talk with, and their relationship to you.

6. If as a result of the Benefit Notice, your medical condition, sexual orientation, sexual practices, and/or reason(s) for taking the prescribed medication has become the subject of gossip in your community, please explain in detail the circumstances.

7. If as a result of the Benefit Notice, your medical condition, sexual orientation, sexual practices, and/or reason(s) for taking the prescribed medication has become known to your employer in a way that was not caused by you, or has affected your employment, please explain in detail the circumstances.

8. If as a result of the Benefit Notice, you have a need for medical or mental health treatment, including counseling, but have not yet received it, please explain in detail the circumstances and why you believe you require medical or mental health treatment.

9. If as a result of the Benefit Notice, you have been treated differently, harassed and/or shunned by family, friends, roommates, neighbors, landlords, or others, please explain in detail the circumstances and identify how you have been treated differently, harassed and/or shunned, and by whom.

10. If as a result of the Benefit Notice, one or more of your important relationships has been damaged, please explain in detail the circumstances and identify the relationship(s) that has been damaged, and how.

11. If as a result of the Benefit Notice, you feel the need to change residences but have not yet done so, please explain in detail the circumstances and identify why you feel the need to change residences and why you have not yet done so.

12. If as a result of the Benefit Notice, you or your dependents have sought and received medical or mental health treatment, including counseling, please explain in detail the circumstances, state how many counseling sessions or visits have occurred, and provide some form of evidence, including by attaching and returning to the Settlement Administrator a doctor's note, insurance record, receipt, invoice, credit card statement, bank statement, copy of returned check, or any other reasonable form of evidence evidencing the visit(s).

13. If as a result of the Benefit Notice, you have experienced repeated episodes of any of the following: trouble sleeping, anxiety, extreme stress, extreme anger, panic attacks, loss of appetite, loss of trust, and/or depression, please explain in detail the circumstances.

14. If as a result of the Benefit Notice, someone in your household has moved out because they no longer wanted to live with you as a result of finding out your reason(s) for taking the prescribed medications, please explain in detail the circumstances, including by identifying the person who previously lived with you and their relationship with you.

15. If as a result of the Benefit Notice, you have been physically harmed or threatened with serious violence or threat of bodily injury, please explain in detail the circumstances, including by identifying the person(s) who harmed or threatened you with serious violence, and describing what occurred.

16. If as a result of the Benefit Notice, you had to change residences, please explain in detail the circumstances, and provide your old and new address, the reason(s) you moved, and provide some form of evidence of your move.

17. If as a result of the Benefit Notice, you suffered any additional non-financial harm that is not covered by any of the above questions, please explain in detail the circumstances.

5

## PART IV – CERTIFICATION AND DECLARATION

I hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 and the laws of the United States of America that all of the information I have provided above is true and correct.

_____          _____

SIGNATURE                                                                                      DATE

_____

PRINT NAME


## PART V -- REMINDER CHECKLIST BEFORE YOU SUBMIT THIS CLAIM FORM

1. Make sure that you fully completed Part I -- Claimant Information.
2. Make sure that you fully completed either or both of Part II and Part III as applicable to your personal situation.
3. Make sure that you signed the Certification and Declaration in Part IV.
4. Make sure that when you return your Claim Form that you include a copy of all required documentation requested above.
5. Make sure that you retain a copy of this Claim Form and your supporting documentation for your records.

# **<u>EXHIBIT B</u>**

**INSERT SETTLEMENT ADMINISTRATOR INFO**

Mail Date

**INSERT PERSONAL CLAIMANT NUMBER**

«ClaimantName»
«Addr1»«Addr2»
«City» «State» «Zip»

RE:     *Andrew Beckett, et al. v. Aetna, Inc., et al.*, No. 2:17-CV-3864-JS (E.D. Pa.)
         **Notice of Deficiency with Claim Form / Claim Package**

Dear INSERT NAME:

Thank you for submitting your Claim Form pursuant to the Settlement Agreement in the above-referenced matter. On behalf of the Court-appointed Settlement Administrator, we have reviewed your Claim Form/Package and it is deficient or lacks necessary information for the following reason(s):

- INSERT detailed explanation for the deficiency and how it can be fixed.

- INSERT more bullet points if needed.

Please note that the deficiency(ies) noted above must be cured by you by **INSERT CURE DEADLINE DATE**, which is thirty (30) days from the date this notice was mailed. You may respond to this notice through the HIPAA-compliant portal located at WEBSITE, or by mail to INSERT MAIL ADDRESS.

If you do not fix the problems identified above, your claim may be denied by the Settlement Administrator.

Please make sure to include your Personal Claimant Number above to assist us in verifying your identity. Your Personal Claimant Number was also printed on the earlier Notice of Settlement that was mailed to you.

If you have any questions about the settlement, please call us toll-free at xxx-xxx-xxxx or by using the Contact Us form located at WEBSITE. For additional information about the Settlement, please visit WEBSITE.

Sincerely,
Settlement Administrator

# EXHIBIT C

Name: <mark>INSERT</mark>
Personal Identification No.: <mark>123456789</mark>

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Andrew Beckett, Arizona Doe, California Doe, S.A., Colorado Doe, Connecticut Doe, DC Doe, Florida Doe, Georgia Doe, Illinois Doe, Indiana Doe, Kansas Doe, Maine Doe, Maryland Doe, Minnesota Doe, Mississippi Doe, Missouri Doe, Nevada Doe, NewHampshire Doe, NewJersey Doe, NewMexico Doe, NewYork Doe1, NewYork Doe2, NewYork Doe3, NewYork Doe4, NorthCarolina Doe, Ohio Doe, Oklahoma Doe, SouthCarolina Doe, Tennessee Doe, Texas Doe, Virginia Doe, Washington Doe, John Doe, Jane Doe2, John Doe1, John Doe2, individually and on behalf of all others similarly situated, | Case No. 2:17-CV-3864-JS |
|        Plaintiffs, | |
| v. | |
| Aetna, Inc., Aetna Life Insurance Company, and Aetna Specialty Pharmacy, LLC, | |
|        Defendants. | |

## NOTICE OF CLASS ACTION SETTLEMENT ("NOTICE")

You are receiving this Notice because you have been identified as being part of a group of people whose Protected Health Information ("PHI") is alleged to have been disclosed improperly by Defendants Aetna, Inc., Aetna Life Insurance Company, and Aetna Specialty Pharmacy, LLC ("Aetna") and/or Aetna-related or affiliated entities, or on their behalf, to third parties, and/or to whom any written notice was mailed in connection with the settlement of legal claims that had been filed against certain Aetna-related entities or affiliates in *Doe v. Aetna, Inc.*, No. 14-cv-2986 (S.D. Cal.) and *Doe v. Coventry Health Care, Inc.*, No. 15-cv-62685 (S.D. Fla.) (collectively, the "*Doe* lawsuits).

It is alleged that there were two possible breaches of privacy: first, in July 2017, it is alleged that Aetna transmitted PHI improperly to its legal counsel and a settlement administrator without having the purportedly proper authorizations to do so; and second, through the sending of a "Benefit Notice." The term "Benefit Notice" means the notice that was sent by the settlement administrator to certain Settlement Class Members to inform Aetna members of their ability to fill prescriptions for

certain medications through mail order or retail pharmacy, as required by the settlement of legal claims that had been filed against certain Aetna-related entities or affiliates in *Doe v. Aetna, Inc.*, No. 14-cv-2986 (S.D. Cal.). Plaintiffs allege that the Benefit Notice was sent in an envelope with a large transparent glassine window in such a manner that the instructions about how individuals could obtain their medications were visible from the outside of the envelope.

A class action lawsuit was filed concerning these events and a settlement has now been preliminarily approved by the Court. This Notice provides information about the lawsuit, the settlement, and your options as a Settlement Class Member. Please read this Notice carefully because it affects your legal rights. A federal court authorized the sending of this Notice to you. This is not a solicitation.

| 1. | **Why Should You Read This Notice?** |
| --- | --- |

You are receiving this Notice because Aetna's records show that you are a Settlement Class Member.

The term "Settlement Class" means all persons whose Protected Health Information was allegedly disclosed improperly by Aetna and/or Aetna-related or affiliated entities, or on their behalf, to third parties, including Gibson, Dunn & Crutcher, LLP ("GDC") and Kurtzman Carson Consultants LLC ("KCC"), and/or to whom any written notice was mailed as required by the settlement of the *Doe* lawsuits. GDC was Aetna's legal counsel in the *Doe* lawsuits and KCC was the settlement administrator in the *Doe* lawsuits. Please note that KCC is not the settlement administrator in this lawsuit.

Approximately 13,487 Settlement Class Members are claimed to have experienced the first privacy breach referenced above because it is alleged that Aetna sent their PHI improperly to its legal counsel GDC and a settlement administrator, KCC, without the proper authorizations in place and these individuals thereafter received some form of written notice in connection with the *Doe* lawsuits. Included in this group are approximately 11,875 Settlement Class Members who also claim to have experienced the second privacy breach referenced above, when they were sent the Benefit Notice as described above, that Plaintiffs allege revealed PHI through the window of the envelope.

This lawsuit was filed on August 28, 2017 in the United States District Court for the Eastern District of Pennsylvania by a plaintiff using the pseudonym Andrew Beckett, to address the harm caused by the events described above. On December 5, 2017, Plaintiffs filed an Amended Class Action Complaint by 37 Plaintiffs who reside in 28 different states and the District of Columbia.

Following an extensive mediation process overseen by former United States Magistrate Judge Diane Welsh, Plaintiffs and Aetna have now reached a settlement that has been preliminarily approved by the Federal Court, and as a Settlement Class Member, you are entitled to a settlement payment.

Specifically, all Settlement Class Members will automatically receive a "Base Payment" of either: (1) the payment of $75 to all Settlement Class Members whose PHI was allegedly disclosed improperly by Aetna to GDC (Aetna's legal counsel in the *Doe* lawsuits) and KCC (the settlement administrator in the *Doe* lawsuits); or (2) the payment of at least $500 (inclusive of the $75 payment

above) to the approximately 11,875 Settlement Class Members who were sent the Benefit Notice described above, whichever is applicable. **All Settlement Class Members shall automatically receive the applicable Base Payment described above without submitting a Claim Form**.

In addition, the approximately 11,875 Settlement Class Members who were sent the Benefit Notice in an envelope that may have revealed their PHI to others may submit a claim for an additional monetary award if they can demonstrate through the submission of reasonable proof that as a result, they suffered: (a) financial harm (meaning non-reimbursed out-of-pocket expenses); or (b) non-financial harm. Settlement Class Members who meet these requirements can submit such a claim by filling out and returning the enclosed Claim Form or by submitting their Claim Form online at WEBSITE by no later than [DATE].

**If you received a Claim Form with this Notice, then you are one of the 11,875 Settlement Class Members who were sent the Benefit Notice.**

The United States District Court for the Eastern District of Pennsylvania has preliminarily approved this Settlement as fair and reasonable and authorized this Notice to be sent to you. The Court will hold a Final Approval Hearing on _____, 2018 at _____, in Courtroom ____, 601 Market Street, Philadelphia, Pennsylvania. Additional information about this case and the Settlement can be found at WEBSITE.

| **2.** | **What Are the Terms of the Settlement?** |
|---|---|

Under the terms of the Settlement Agreement, a copy of which is available at WEBSITE, Aetna has agreed to pay the non-reversionary cash amount of $17,161,200.00 (the "Settlement Fund") to settle all claims relating to the alleged breaches described above and/or asserted in this lawsuit. None of this money will ever be returned to Aetna under any circumstance.

The Settlement Fund will be used to pay: (a) all Settlement Payments to Settlement Class Members; (b) all settlement administration fees and costs as approved by the Court, not to exceed $_____; (c) Class Counsel's attorneys' fees, not to exceed twenty-five percent of the Settlement Fund, plus costs, subject to the approval of the Court; and (d) service awards to the 37 Class Representatives that are approved by the Court in an aggregate amount not to exceed $100,000. The "Net Settlement Fund" is the amount left in the Settlement Fund after the Court-approved deductions for settlement administration fees and costs, attorneys' fees and costs, and service awards.

In addition to the Settlement Fund, Aetna has agreed to: (a) develop and implement a "best practices" policy (the "Policy") for use of PHI in litigation; (b) communicate the Policy to Aetna in-house and outside counsel in all existing litigation matters; (c) implement procedures to ensure that the Policy is clearly communicated to in-house and outside counsel on all new litigation matters; (d) provide training regarding the Policy and Aetna's requirements under HIPAA and applicable federal and state privacy laws as appropriate to all Aetna in-house counsel whose primary responsibility is to manage litigation involving Aetna; and (e) conduct an audit of all outside counsel handling Aetna litigation matters to ensure that such counsel has executed an Aetna-approved Business Associates Agreement ("BAA") with Aetna. Aetna will keep records to ensure compliance with the terms of the

Settlement Agreement for a period of seven (7) years. Aetna will incur additional costs to implement these actions that Aetna will pay <u>in addition to</u> the Settlement Fund described above.

The Settlement Payments to Settlement Class Members will be calculated as follows:

A.     **Automatic Base Payment**: All Settlement Class Members will automatically receive a "Base Payment" of either: (1) the payment of $75 to all Settlement Class Members whose PHI was allegedly disclosed improperly by Aetna to GDC (Aetna's legal counsel in the *Doe* lawsuits) and KCC (the settlement administrator in the *Doe* lawsuits); or (2) the payment of at least $500 (inclusive of the $75 payment above) to all approximately 11,875 Settlement Class Members who were sent the Benefit Notice, whichever is applicable. **All Settlement Class Members shall automatically receive the applicable Base Payment amount described above without submitting a Claim Form**.

B.     **Claimant Award**: The approximately 11,875 Settlement Class Members who were sent the Benefit Notice may also submit a Claim Form and any required supporting documentation to apply for an additional monetary award if they believe that as a result of the Benefit Notice, they suffered financial harm or non-financial harm. In order to be considered timely and valid, all Claim Forms and supporting documentation must be submitted by DATE. The Court-appointed Settlement Administrator shall receive and review all completed Claim Forms, and shall calculate all Claimant Awards. Claimant Awards shall be based on the total of: (a) the Claimant's Financial Harm Award; and (b) the Claimant's Non-Financial Harm Award.

i.     <u>Financial Harm Award</u>. A Claimant's Financial Harm Award shall be calculated by the Settlement Administrator based on all reasonable non-reimbursed out-of-pocket expenses incurred by the Claimant as documented on the Claim Form. The Claim Form shall be submitted under penalty of perjury. Examples of such out-of-pocket expenses include, for example, moving costs, counseling costs, loss of income, or other non-reimbursed out-of-pocket expenses caused by the Benefit Notice. "Reasonable proof" is required. The term "reasonable proof" means the submission to the Settlement Administrator by the Claimant of copies of receipts, invoices, credit card statements, medical records, insurance records, returned checks, and/or any other reasonable form of proof of non-reimbursed out-of-pocket expenses incurred as a result of the Benefit Notice. Amounts that a Claimant already received from Aetna will offset any Financial Harm Award to the extent that it would result in a double-recovery.

ii.     <u>Non-Financial Harm Award</u>. A Claimant's Non-Financial Harm Award shall be calculated by the Settlement Administrator based on the Claimant's answers on their Claim Form using an objective point-scoring system as set forth in Exhibit D to the Settlement Agreement. All answers given on the Claim Form shall be submitted under penalty of perjury.

iii.     <u>Amount of Claimant Awards</u>. Claimants may receive up to $10,000 for financial harm as calculated by the Settlement Administrator and up to $10,000 for non-financial harm as calculated by the Settlement Administrator, for a total maximum of up to $20,000 in addition to the minimum Base Payment described above. The final amount of any Claimant Awards, however, shall be based on the number of Claimants and a *pro rata* distribution of the amount remaining in the Net Settlement Fund for distribution after all minimum Base Payments are subtracted.

iv.       <u>Net Settlement Fund</u>. If there is money remaining in the Net Settlement Fund after deducting the minimum Base Payments for all Settlement Class Members and all Claimant Awards, the remaining money shall be distributed *pro rata* to all Settlement Class Members who were sent the Benefit Notice, and shall have the effect of raising the Base Payment Amount for these individuals to an amount above $500.

C.       **Timing of Payments**. Settlement Checks will be mailed by U.S. first class mail by the Settlement Administrator to Settlement Class Members no later than 45 days after the Settlement Agreement receives final approval by the Court and the time for any appeals have expired, or any appeals have been resolved.

D.       **Uncashed Checks**. The total amount of any uncashed settlement checks after 180 days will be distributed to a *cy pres* recipient – The AIDS Coordinating Committee of the American Bar Association ("the Committee"). The Committee will use a Request for Proposal ("RFP") process to redistribute any funds it receives to nonprofit public-interest legal organizations working on health privacy issues. None of Plaintiffs' Counsel will submit a funding request through this RFP process.

In consideration of the benefits provided to Settlement Class Members by Aetna as described in this Settlement Agreement, upon the Effective Date, each Settlement Class Member, on his or her own behalf and on behalf of his or her respective predecessors, successors, assigns, assignors, representatives, attorneys, agents, trustees, insurers, heirs, estates, beneficiaries, executors, administrators, and any natural, legal, or juridical person or entity to the extent he, she, or it is or will be entitled to assert any claim on behalf of any Settlement Class Member (the "Releasors"), hereby waive and release, forever discharge and hold harmless the Released Parties, and each of them, of and from any and all past, present and future claims, counterclaims, actions, rights or causes of action, liabilities, suits, demands, damages, losses, payments, judgments, debts, dues, sums of money, costs and expenses (including, without limitation, attorneys' fees and costs), accounts, bills, covenants, contracts, controversies, agreements, obligations, or promises, in law or in equity, contingent or non-contingent, known or unknown, suspected or unsuspected, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, liquidated or unliquidated, whether patent or latent, concealed or overt, direct, representative, class or individual in nature, in any forum ("Claims") that the Releasors, and each of them, had, has, or may have in the future arising out of, in any way relating to or in connection with the Incident or the allegations, transactions, facts, matters, occurrences, representations or omissions involved, that are or could have been alleged or set forth in, referred to, or relate to the Complaint and/or Amended Complaint (collectively, the "Released Claims," or the "Releases"). The term Released Parties means the Aetna Released Parties and any other person or entity that is potentially responsible for causing or in any way involved in the events giving rise to this lawsuit.

| 3.       How Do I Submit A Claim Form? |
|---|

Please note that the Claim Form is solely for the approximately 11,875 Class Members who claim to have been harmed as a result of the mailing of the Benefit Notice, which Plaintiffs allege potentially revealed PHI through the window of the envelope, and who can demonstrate that they suffered financial harm or non-financial harm as a result. **If you were not sent the Benefit Notice**

or do not claim to have suffered financial harm or non-financial harm as a result of the Benefit Notice, then do not fill out the Claim Form. You will automatically receive the applicable Base Payment described above.

In order to be considered valid and timely, Claim Forms must be submitted by DATE. Settlement Class Members may submit multiple Claim Forms before DATE, but shall not recover twice for the same item of alleged damage or harm.

You may fill out this Claim Form in hard copy or you may download and fill out the electronic Claim Form located at WEBSITE. The electronic Claim Form can be uploaded using the HIPAA-compliant portal also located on the website. If you fill out the Claim Form in hard copy, you may return it by uploading it using the HIPAA-compliant portal at WEBSITE or by mail to INSERT ADDRESS.

If you have any questions about this Claim Form, please call the Settlement Administrator toll-free at xxx-xxx-xxxx or contact the Settlement Administrator by using the Contact Us form located at WEBSITE. For additional information about the Settlement, please visit WEBSITE. If you decide to fill out and return the Claim Form, all information you provide will be kept strictly confidential by the Settlement Administrator and will be destroyed by the Settlement Administrator after the distribution of the settlement proceeds.

Important -- It is your responsibility to let the Settlement Administrator know if your mailing address changes at any time before you receive a Settlement Payment or if you want future mail sent to a different mailing address. If you fail to keep your address current, you may not receive your Settlement Award.

| 4. | What Are My Rights? |
|---|---|

If you wish to participate in the Settlement, you may: (a) do nothing, in which case you will automatically receive the applicable Base Payment as described above without having to submit a Claim Form; or (b) if you were harmed by the Benefit Notice and can meet the requirements for a Claimant Award noted above, you may submit a Claim Form, as described above, for compensation in addition to the Base Payment, postmarked by DATE.

If you wish to exclude yourself from the Settlement so that you do not receive any Settlement Award and are not bound by any release of claims, then you must submit a written request to opt out to the Settlement Administrator stating "I wish to exclude myself from the Settlement Class in *Beckett v. Aetna, Inc., et al.*, No. 2:17-cv-03864-JS (E.D. Pa.) (or in substantially similar clear and unambiguous language), postmarked by DATE. Your request for exclusion must include your printed name, address, telephone number, email address, date of birth, and actual written signature. Requests for exclusion cannot be made on a group or class basis. All Settlement Class Members who do not timely and properly request exclusion from the Settlement Class will in all respects be bound by all terms of this Settlement Agreement and the Court's Final Approval Order, and upon the Effective Date, will be entitled to all benefits described in this Settlement Agreement. The request for exclusion must be sent to the Settlement Administrator at INSERT ADDRESS. Any person who requests

exclusion from the Settlement will not be entitled to any Settlement Award and will not be bound by the Settlement Agreement or have any right to object, appeal, or comment thereon.

If you wish to accept a Settlement Award but submit an objection to the Settlement, you must submit a written objection to the Settlement Administrator postmarked by DATE, explaining why you believe that the Settlement Agreement should not be approved by the Court as fair, reasonable and adequate. The written statement must include a detailed statement of your specific objection, as well as the specific reasons for your objection, including any evidence and legal authority that you believe supports your objection. Your written statement must include your printed name, address, telephone number, date of birth, and actual written signature, and must attach any other supporting papers, materials, or briefs that you wish the Court to consider when reviewing the objection. If you wish to use a pseudonym for purposes of the public record, you may, and you should inform the Settlement Administrator of your requested pseudonym in your written statement, but you must provide your real name to the Settlement Administrator. If you are represented by counsel, your objection must identify the counsel who represent you and provide their contact information.

If you wish to send the Settlement Administrator a letter in support of the Settlement, you are free to do so, and may send your letter to INSERT ADDRESS.

| 5. | Can Aetna Retaliate Against Me For Participating In This Settlement? |
|---|---|

No. Aetna has agreed that it will not retaliate against any Plaintiff, Class Representative, or Settlement Class Member in any fashion for having participated in this litigation and Settlement Agreement, including, without limitation, with respect to the provision of any health insurance benefits.

| 6. | Who Are The Attorneys Representing The Class? |
|---|---|

The attorneys who represent the Settlement Class are listed below:

| Co-Lead Class Counsel | Co-Lead Class Counsel | Co-Lead Class Counsel | Class Counsel |
|---|---|---|---|
| Ronda B. Goldfein<br>Yolanda French Lollis<br>Adrian M. Lowe<br>AIDS Law Project of Pennsylvania<br>1211 Chestnut Street, #600<br>Philadelphia, PA 19107<br>(215) 587-9377<br>aetnaclass@aidslawpa.org | Sally Friedman<br>Monica Welby<br>Karla Lopez<br>Legal Action Center<br>225 Varick Street, St. 402<br>New York, NY 10014<br>(212) 243-1313<br>sfriedman@lac.org | Shanon Carson<br>E. Michelle Drake<br>Sarah R. Schalman-Bergen<br>John Albanese<br>Berger & Montague, P.C.<br>1622 Locust Street<br>Philadelphia, PA 19103<br>(215) 875-3000<br>scarson@bm.net | Torin A. Dorros<br>Dorros Law<br>8730 Wilshire<br>Boulevard, Suite 350<br>Beverly Hills, CA 90211<br>(310) 997-2050<br>tdorros@dorroslaw.com |

The AIDS Law Project of Pennsylvania and the Legal Action Center are both nonprofit public-interest legal organizations that have been representing people living with HIV and AIDS for more than thirty years.

| 7. | How Will The Attorneys For The Settlement Class Be Paid? |
|---|---|

You do not have to pay the attorneys who represent the Settlement Class. The Settlement Agreement provides that attorneys' fees and costs will be paid from the Settlement Fund subject to the approval of the Court. The attorneys' request for fees will not exceed twenty-five percent (25%) of the Settlement Fund plus reimbursement of reasonable out-of-pocket costs.

| 8. | Who May I Contact If I Have Further Questions? |
|---|---|

If you need more information or have any questions, you may contact the AIDS Law Project of Pennsylvania at (215) 587-9377 or at aetnaclass@aidslawpa.org or the Settlement Administrator using the information below. Please refer to the Aetna Privacy Settlement.

*Aetna Privacy Settlement*
[ADDRESS]
[TELEPHONE NUMBER]
[TOLL FREE NUMBER]
[EMAIL]
INSERT SETTLEMENT WEBSITE

This Notice only summarizes the Lawsuit, the Settlement and related matters. For more information, you may also inspect the Court files at the Office of the Clerk, United States District Court located at 601 Market Street, Philadelphia, Pennsylvania, from 8:30 a.m. to 4:30 p.m., Monday through Friday.

**PLEASE DO NOT CONTACT THE COURT.**

# **<u>EXHIBIT D</u>**

## CLAIMANT PAYMENT FORMULA

A Claimant's Award shall be the total of: (a) the Claimant's Financial Harm Award, if any; and (b) the Claimant's Non-Financial Harm Award, if any, as calculated by the Settlement Administrator.

A.      Financial Harm Award. A Claimant's Financial Harm Award shall be calculated by the Settlement Administrator and shall include all reasonable non-reimbursed out-of-pocket expenses incurred by the Claimant up to $10,000 that were caused by the Benefit Notice, including, for example, any moving costs, counseling costs, loss of income, or other non-reimbursed out-of-pocket expenses upon a showing of reasonable proof. The term "reasonable proof" means the submission to the Settlement Administrator by the Claimant of receipts, invoices, credit card statements, medical records, insurance records, copies of returned checks, and/or any other reasonable form of written proof of non-reimbursed out-of-pocket expenses incurred as a result of the Benefit Notice. Amounts already received by a Claimant as part of Aetna's Immediate Relief Program will offset any Financial Harm Award to the extent that it would result in a double-recovery.

B.      Non-Financial Harm Award. A Claimant's Non-Financial Harm Award shall be calculated by the Settlement Administrator based upon the Claimant's answers submitted under penalty of perjury on their Claim Form using the objective Claim Form Award Grid below. Amounts already received by a Claimant as part of Aetna's Immediate Relief Program will not offset any Non-Financial Harm Award. The Settlement Administrator shall tally the points for each Claimant based upon the Claim Form Award Grid below, and the amount of each Claimant's Non-Financial Harm Award shall be calculated by the Settlement Administrator as follows:

| Total Points for Claimant | Amount of Award |
| --- | --- |
| 1 – 5 | $500 |
| 6 – 10 | $2,500 |
| 11 – 17 | $5,000 |
| 18 and up | $10,000 |

If the Net Settlement Fund after all Base Payments are subtracted as set forth in the Settlement Agreement does not cover the total collective amount of all Claimant Awards as calculated by the Settlement Administrator (including both Financial Harm Awards and Non-Financial Harm Awards combined), then each totaled Claimant Award shall be reduced *pro rata* to be paid out of the remaining amount in the Net Settlement Fund.

**Claim Form Award Grid**

| Questions on Claim Form | Points Assigned for Affirmative Response |
|---|---|
| 1. If someone other than you received your mail the day the Benefit Notice arrived, please explain in detail the circumstances and identify the person(s) that received your Benefit Notice. | If answer to Question 1, 2, and/or 3 is affirmative, then 1 |
| 2. If your Benefit Notice was left in an area visible to others, please explain in detail the circumstances and state where the Benefit Notice was left. | If answer to Question 1, 2, and/or 3 is affirmative, then 1 |
| 3. If your Benefit Notice was delivered to a residence or post office box that was not yours, please explain in detail the circumstances including how you came to know of this. | If answer to Question 1, 2, and/or 3 is affirmative, then 1 |
| 4. If as a result of the Benefit Notice, one or more people learned that you were taking the prescribed medication, please explain in detail the circumstances including by identifying the people who learned that you were taking the prescribed medication. | 1 |
| 5. If as a result of the Benefit Notice, you felt forced to explain to someone for the first time about your reason(s) for taking the prescribed medication (including, for example, disclosing your sexual orientation, sexual practices, or medical condition), please explain in detail the circumstances including by identifying the person(s) that you felt forced to talk with, and their relationship to you. | 2 |
| 6. If as a result of the Benefit Notice, your medical condition, sexual orientation, sexual practices, and/or reason(s) for taking the prescribed medication has become the subject of gossip in your community, please explain in detail the circumstances. | 2 |
| 7. If as a result of the Benefit Notice, your medical condition, sexual orientation, sexual practices, and/or reason(s) for taking the prescribed medication has become known to your employer in a way that was not caused by you, or has affected your employment, please explain in detail the circumstances. | 2 |
| 8. If as a result of the Benefit Notice, you have a need for medical or mental health treatment, including counseling, but have not yet received it, please explain in detail the circumstances and why you believe you require medical or mental health treatment. | 2 |
| 9. If as a result of the Benefit Notice, you have been treated differently, harassed and/or shunned by family, friends, roommates, neighbors, landlords, or others, please explain in detail the circumstances and identify how you have been treated differently, harassed and/or shunned, and by whom. | 3 |
| 10. If as a result of the Benefit Notice, one or more of your important relationships has been damaged, please explain in detail the circumstances and identify the relationship(s) that has been damaged, and how. | 3 |
| 11. If as a result of the Benefit Notice, you feel the need to change residences but have not yet done so, please explain in detail the circumstances and identify why you feel the need to change residences and why you have not yet done so. | 3 |

| | |
|---|---|
| 12. If as a result of the Benefit Notice, you or your dependents have sought and received medical or mental health treatment, including counseling, please explain in detail the circumstances, state how many counseling sessions or visits have occurred, and provide some form of evidence, including by attaching and returning to the Settlement Administrator a doctor's note, insurance record, receipt, invoice, credit card statement, bank statement, copy of returned check, or any other reasonable form of evidence evidencing the visit(s). | 4 |
| 13. If as a result of the Benefit Notice, you have experienced repeated episodes of any of the following: trouble sleeping, anxiety, extreme stress, extreme anger, panic attacks, loss of appetite, loss of trust, and/or depression, please explain in detail the circumstances. | 5 |
| 14. If as a result of the Benefit Notice, someone in your household has moved out because they no longer wanted to live with you as a result of finding out your reason(s) for taking the prescribed medications, please explain in detail the circumstances, including by identifying the person who previously lived with you and their relationship to you. | 6 |
| 15. If as a result of the Benefit Notice, you have been physically harmed or threatened with serious violence or threat of bodily injury, please explain in detail the circumstances, including by identifying the person(s) who harmed or threatened you with serious violence, and describing what occurred. | 6 |
| 16. If as a result of the Benefit Notice, you had to change residences, please explain in detail the circumstances, and provide your old and new address, the reason(s) you moved, and provide some form of evidence of your move. | 7 |
| 17. If as a result of the Benefit Notice, you suffered any additional non-financial harm that is not covered by any of the above questions, please explain in detail the circumstances. | 3 (though the Administrator shall not assign the points if the answer is duplicative of any questions above and/or if there is not an affirmative answer to Questions 1, 2 or 3) |

# **<u>EXHIBIT E</u>**

==SETTLEMENT ADMIN INFO==

Mail Date

«ClaimantName»
«Addr1»«Addr2»
«City» «State» «Zip»

**RE:**    *Andrew Beckett, et al. v. Aetna, Inc., et al.*, No. 2:17-CV-3864-JS (E.D. Pa.)
              **Notice of Deficiency with Claim Form / Claim Package**

Dear ==INSERT NAME==:

Thank you for participating in the class action settlement in the above-referenced matter. Your settlement payment, which is attached to this letter, was calculated in accordance with the terms of the Court-approved Settlement Agreement.

Please note that your attached check must be cashed on or before ==MAILDATE+180 days==. If you fail to cash your check by ==MAILDATE+180==, your check will be voided and the funds will be distributed to ==INSERT CY PRES APPROVED BY THE COURT==, pursuant to the Court's Final Approval Order and Judgment.

Please also note that the Settlement Administrator and Class Counsel cannot provide tax advice. We suggest that you contact your tax advisor regarding your settlement payment and the tax consequences related to these proceeds.

If you have any questions about your settlement payment, please call us toll-free at ==xxx-xxx-xxxx== or contact us using the Contact Us form located at ==WEBSITE==. For additional information about the Settlement, please visit ==WEBSITE==.

Sincerely,
Settlement Administrator

**SAVE THIS INFORMATION**

| | |
|---|---|
| Settlement Payment | «Bene» |
| **Total Payment** | **«CKAMT»** |

**DETACH CHECK BEFORE CASHING -- VOID AFTER ==MAILDATE+180 days==**

3

# EXHIBIT F

Standard Operating Procedure

Use of Protected Health Information in Litigation – Best Practices Policy



| Procedure Name: | Use of Protected Health Information in Litigation – Best Practices Policy |
|---|---|
| Procedure Number: | ### |
| Effective Date: | |
| Business Unit Name: | Litigation |
| Business Owner: | |
| Department Head: | |
| Approval Date: | |
| Type | ☒ New |
| Applicable Business | ☒ Litigation |

## Document Control and Version History

| Version | Effective Date | Author | Comments | Status |
|---|---|---|---|---|
| 1.0 | | | | |

For Aetna Use Only

Standard Operating Procedure

Use of Protected Health Information in Litigation – Best Practices Policy

# Table of Contents

Document Control and Version History..................................................................................................1

Background ...........................................................................................................................................3

Purpose ................................................................................................................................................3

Scope ...................................................................................................................................................4

Definitions.............................................................................................................................................4

Use of PHI in Litigation – Best Practices .............................................................................................5

For Aetna Use Only

Standard Operating Procedure

Use of Protected Health Information in Litigation – Best Practices Policy

## Background

Aetna, Inc., Aetna Life Insurance Company and Aetna Specialty Pharmacy, LLC ("collectively, "Aetna is a "covered entity" as defined in the Health Insurance Portability and Accountability Act of 1996, as amended ("HIPAA"), and its implementing rules and regulations, including the Standards for Privacy of Individually Identifiable Health Information (the "HIPAA Rules").  As a covered entity, Aetna has certain legal obligations regarding the use and disclosure of protected health information ("PHI") in its possession.  In general, Aetna may not use or disclose an individual's PHI for purposes unrelated to treatment, payment or health care operations (which includes conducting or arranging for litigation services), without first obtaining the individual's signed authorization.  This general rule is subject to certain specified exceptions.  One of those exceptions covers the use and disclosure of an individual's PHI in judicial and administrative proceedings.

The obligations relating to the use and disclosure of PHI apply not only to covered entities like Aetna, but also to their business associates.  A "business associate" is, among other things, a person or entity who "creates, receives, maintains, or transmits" PHI in the course of performing services on behalf of the covered entity.  Thus, retained litigation counsel for Aetna is a business associate if it "creates, receives, maintains, or transmits" PHI in the course of its representation of Aetna.  As explained below, it is Aetna's policy that all retained litigation counsel for Aetna must execute an Aetna-approved business associate agreement ("BAA") with Aetna or sub-BAA with litigation counsel before it may perform legal services.  Aetna-approved BAAs require Aetna's business associates to keep PHI secure and to only use and disclose PHI for the purposes for which they are engaged.

In addition, Aetna has certain additional legal obligations relating to the use and disclosure of specific classes of PHI, including information relating to health plan members' HIV status and behavioral health and substance use disorder treatment.  These requirements apply equally to retained litigation counsel who have access to these classes of PHI.

## Purpose

The purpose of this Use of Protected Health Information in Litigation – Best Practices Policy ("Best Practices Policy") is to implement comprehensive, best practices policies and procedures for the use of PHI in litigation in which Aetna is a party, and establish specialized processes for litigation involving heightened privacy concerns, including health plan members' HIV-related and behavioral health and substance use disorder information.  This Best Practices Policy also sets forth policies and procedures for the disclosure of PHI when Aetna is not a party to an action.  This Best Practices Policy is designed to provide best practices in addition to satisfying any legal requirements that may exist.

For Aetna Use Only

Standard Operating Procedure

Use of Protected Health Information in Litigation – Best Practices Policy

## Scope

This Best Practices Policy applies to all litigation managed by Aetna's litigation group supervised by Aetna's Head of Litigation ("Head of Litigation;" currently, Ed Neugebauer).

## Definitions

**BA**:          Business Associate.  A business associate is a person or entity that performs certain functions or activities that involve the use or disclosure of PHI on behalf of, or provides services to, a covered entity.

**BAA:**          Business Associate Agreement. A business associate agreement is a contract between a covered entity (such as a health plan) and a BA.  The BAA protects PHI in accordance with HIPAA Rules.

**CE:**          Covered Entity.  A covered entity is any entity that is (i) a health care provider that conducts certain transactions in electronic form (called here a "covered health care provider"); (ii) a health care clearinghouse; or (iii) a health plan.  Aetna is a CE because it is a health plan.

**HIPAA Rules**:   HIPAA Rules is defined herein as HIPAA and its implementing rules and regulations, including the Standards for Privacy of Individually Identifiable Health Information ("Privacy Rule").

**PHI**:          Protected Health Information, or PHI,  as defined in 45 C.F.R. 160.103, includes information maintained by Aetna or one of its BAs that identifies an individual and relates to the individual's health condition, medical treatment or payment for health care.  As explained below, PHI can be part of many different types of records, such as claims data, medical records and pre-certification information.  PHI also includes demographic information such as dates of birth or zip codes that are part of a data set that has been derived from records containing health information, even if no health information remains in that data set.

**QPO**:          Qualified Protective Order.  A Qualified Protective Order is an order from a court that limits use and disclosure of PHI in litigation.  Pursuant to 42 C.F.R. 164.512(e)(1)(v), a QPO must meet the following requirements: (1) prohibits the parties from using or disclosing the PHI for any purpose other than the litigation or proceeding; and (2) requires the return to the covered entity or destruction of the PHI at the end of the litigation or proceeding.

For Aetna Use Only

## Use of PHI in Litigation – Best Practices

Consistent with Aetna's Guide for Outside Counsel and related addenda (the "Guide"), it is critical that Aetna and retained litigation counsel follow federal laws, including HIPAA Rules, and applicable state laws regarding the use, disclosure and handling of PHI, including information related to HIV, behavioral health, and substance use.  Aetna may use or disclose PHI without the written authorization of the individual referenced in the PHI in limited situations such as in connection with judicial proceedings, subject to specific rules and limitations.  This Best Practices Policy summarizes "best practices" that Aetna and retained litigation counsel must follow in connection with the use and disclosure of PHI in judicial proceedings and pre-litigation negotiations.

1.      All Retained Litigation Counsel Must Sign An Aetna-Approved BAA

All retained litigation counsel who work on Aetna litigation matters must sign an Aetna-approved BAA or sub-BAA before starting work, regardless whether PHI may or may not be disclosed as part of the matter.  Exceptions to this rule may be granted only in limited circumstances with the express written approval by Aetna's Head of Litigation.

Aetna will establish a SharePoint with signed BAAs for retained litigation counsel.  Aetna personnel must verify that a signed Aetna-approved BAA is in place **before** retained litigation counsel may commence work.  Aetna will, on a periodic basis (and at least once annually) perform audits to ensure compliance with this section.

Aetna will notify retained litigation counsel when additional agreements are required under federal and/or state laws governing the confidentiality of certain types of sensitive health information, such as health plan members' HIV and behavioral health status and substance use disorder information.

2.      De-identified Member Information

As a general matter, it is Aetna's policy to limit, whenever possible, the use and/or disclosure of health information in all litigation to only de-identified member information.  Aetna and/or retained litigation counsel must take all reasonable steps to avoid the use and disclosure of PHI in litigation matters.

Health information is "individually identifiable" if it includes any of the 18 types of identifiers for an individual or for the individual's employer or family member, or if the provider or researcher is aware that the information could be used, either alone or in combination with other information, to identify an individual.  These identifiers include, among others, name, address (all geographic subdivisions smaller than state, including street address, city, county, or ZIP code), all elements (except years) of dates related to an individual (including birth date, admission date, discharge date, date of death, and exact age if over 89), telephone or fax numbers, medical record or health plan beneficiary numbers, license plate numbers, email address, Social Security number, certificate/license number, and any other unique identifying number, characteristic, or code.  45 C.F.R. 160.103.

Standard Operating Procedure

Use of Protected Health Information in Litigation – Best Practices Policy

This "best practice" applies regardless whether Aetna is using health information in litigation for its own purposes or is responding to a subpoena, document request or other lawful process.

3.      <u>Minimum Necessary Standard</u>

If PHI is required to be used or disclosed in litigation, it is Aetna's policy to limit the use or disclosure of PHI to the minimum necessary to accomplish the intended purpose of the use or disclosure (the "Minimum Necessary Standard").  Thus, if PHI is required to be used or disclosed in litigation, Aetna and/or retained litigation counsel must take all reasonable steps to limit the use and disclosure of PHI in litigation to the Minimum Necessary Standard prior to its use or disclosure.

This practice applies regardless whether Aetna is using PHI in litigation for its own purposes or is responding to a subpoena, document request or other lawful process.  This Best Practices Policy does not, however, require Aetna to move to quash or limit any discovery request or subpoena that calls for the production of PHI.

4.      <u>Best Practices Regarding Aetna's Use / Disclosure of PHI in Litigation</u>

In general, Aetna may use or disclose PHI for treatment, payment, or health care operations.  "Health care operations" includes conducting or arranging for legal services.  Thus, Aetna may use or disclose PHI in connection with litigation, subject to the limitations set forth herein.

        a.      <u>Use of Business Associates By Aetna to Assist It in Litigation</u>

Aetna is entitled to use BAs to assist it in litigation.  As noted above, retained litigation counsel is a BA and is required to execute a BAA prior to starting work.  Retained litigation counsel may also hire other counsel (e.g., local counsel), sub-contractors and/or vendors to assist it in litigation.  If those sub-contractors or vendors will have access to PHI, they must also sign a BAA directly with Aetna, or sign a sub-BAA with retained litigation counsel, prior to starting work.  It is Aetna's practice for Aetna-retained experts and consultants, as well as Aetna-retained litigation support vendors (including, for example, court reporters, mail vendors, claims or settlement administrators, copy services and the like) to execute a BAA (if retained directly by Aetna) or a sub-BAA (if retained by litigation counsel), before PHI is disclosed to them by Aetna or litigation counsel.

If Aetna or an Aetna BA retains a litigation support vendor (including a claims or settlement administrator) to communicate directly to Aetna members, Aetna or an Aetna BA must obtain a BAA or sub-BA with the Aetna-retained vendor and comply with the provisions of Sections 5-11 of the Best Practices Policy below.  Aetna shall also require the entry of a QPO for disclosure of PHI to any Aetna-retained vendor.

For Aetna Use Only

Use of Protected Health Information in Litigation – Best Practices Policy

If, however, Aetna is ordered by a Court to provide PHI to a litigation support vendor (including a claims or settlement administrator), either directly or through a third party, Aetna is not required to obtain a BAA with that vendor, but is required to disclose only the PHI expressly authorized by the Court in the manner the Court so orders, and shall request entry of a QPO or other appropriate order to govern the transmission of the PHI.

An Aetna-approved form BAA and an Aetna-approved sub-BAA are attached to the Guide.

Aetna will establish a SharePoint with a list of Aetna-approved expert and consulting firms and litigation support vendors with which Aetna has already entered into a BAA.  Aetna and/or retained litigation counsel shall ensure that any experts, consultants or litigation support vendors it intends to use in litigation has signed a BAA or sub-BAA prior to the disclosure of PHI to them.

In addition, it is Aetna's policy to require Aetna-retained experts, consultants and litigation support vendors to also sign an affidavit or declaration agreeing to the terms of the QPO (see below) that has been entered in the litigation prior to starting work.  This requirement is not in lieu of obtaining a BAA, but is in addition to obtaining a BAA, with Aetna-retained experts, consultants and litigation support vendors.

Any disclosure of PHI to experts, consultants or litigation support vendors should be memorialized and monitored by Aetna and retained litigation counsel pursuant to the chain of custody requirements discussed below in Section 8 below.

***Further, in cases involving specific classes of PHI, including information relating to a health plan members' HIV status or behavioral health or substance use, Aetna and retained litigation counsel must assess all applicable federal and state-specific laws and regulations addressing those specific classes of PHI to ensure compliance with those laws and regulations before using or disclosing such PHI to Aetna-retained experts, consultants or litigation support vendors (including claims and settlement administrators).***

      b.   <u>Minimum Necessary Standard</u>

The Minimum Necessary Standard described above applies to all uses and disclosures of PHI by Aetna or its business associates in litigation.

      c.   <u>Use / Disclosure of PHI By Aetna in Court Proceedings</u>

It is Aetna's policy not to file PHI with any court unless reasonably necessary.  If necessary to file, Aetna and/or retained litigation counsel must take all reasonable steps to protect against the public disclosure of PHI through redacting PHI from public filings and/or filing documents that contain PHI under seal or *in camera*, in compliance with court rules.   Aetna and/or retained litigation counsel shall work with courts to protect the public disclosure of PHI in trials or other proceedings.  In cases involving specific classes of PHI, including information relating to a health plan member's HIV status or behavioral health or

Use of Protected Health Information in Litigation – Best Practices Policy

substance use, Aetna and/or retained litigation counsel must assess all applicable federal and state-specific laws and regulations addressing those specific classes of PHI to ensure compliance with those laws and regulations, and may be required to take additional steps to protect against the public disclosure of PHI.

5.      Best Practices Regarding Disclosure of PHI to Opposing Party or Requesting Third Party

Aetna may not produce PHI to an opposing party or a requesting third party, except as set forth below.

a.      HIPAA Authorization

In any litigation or settlement, or pre-litigation matter involving an individual member (or individual members), if requested by the member's attorney (or other designated representative), Aetna and/or outside litigation counsel may disclose member PHI to them if the member(s) have signed a HIPAA Authorization permitting the disclosure pursuant to HIPAA Rules.  A copy of Aetna's standard HIPAA Authorization form is attached to the Guide.

*In situations where specific classes of PHI, including information relating to a health plan members' HIV status and behavioral health and substance use, could potentially be used or disclosed to a member's counsel, Aetna and retained litigation counsel must assess applicable federal and state-specific laws to ensure that the authorization form complies with those laws prior to disclosing the member's PHI to the member's attorney or other third party.*

This "best practice" applies regardless whether or not Aetna is a party to an action.

b.      Disclosures Pursuant to Lawful Process

In addition, Aetna and retained litigation counsel may disclose PHI in the course of a judicial proceeding under the following circumstances only (42 C.F.R. 164.512(e)):

(1)      In response to an order of a court or administrative tribunal, provided that Aetna only discloses the PHI *expressly* authorized by the order, and if the order does not contain a QPO, Aetna shall request a QPO or other appropriate order;

(2)      In response to a subpoena, discovery request, or other lawful process propounded by an opposing party or requesting third party if: (i) Aetna receives satisfactory assurances that the party seeking the information has made reasonable efforts to ensure that the individual who is the subject of the PHI has been given notice of the request, or (ii) the party seeking the information has secured a QPO.  Aetna and/or retained litigation counsel must make reasonable efforts to meet and confer with the requesting party to narrow the scope of the requested PHI to the Minimum Necessary Standard, consistent with Section 4(b) above.

For Aetna Use Only

Standard Operating Procedure

Use of Protected Health Information in Litigation – Best Practices Policy

*Further, in cases involving specific classes of PHI, including information relating to health plan members' HIV status or behavioral health or substance use, Aetna and/or retained litigation counsel must assess relevant laws and regulations addressing those specific classes of PHI to ensure compliance with those laws and regulations prior to use or disclosure in litigation.*

c.   Entry of QPO

In any case in which PHI may be used or disclosed to an opposing party in litigation, it is Aetna's policy to require the entry of a QPO at the earliest possible time in the litigation.  Attached to the Guide is a form QPO that may be used in litigation, subject to court- or state-specific requirements.

*In cases involving specific classes of PHI, including information relating to health plan members' HIV status or behavioral health or substance use, Aetna and/or retained litigation counsel must assess and, where applicable, modify the form QPO to ensure compliance with laws and regulations that address those specific classes of PHI.*

In individual member litigation, a QPO is not required to produce member PHI to a member's attorney (or designated representative), if that member executes a valid authorization form prior to disclosure. That said, it is Aetna's policy to ensure that a QPO is entered in all cases in which PHI may be used or disclosed, prior to use or disclosure.  In individual member cases, retained litigation counsel should consult with and obtain approval from Aetna prior to disclosing member PHI to a member's attorney and must take reasonable steps to ensure that a QPO is entered at the earlier possible time.  Aetna's retained litigation counsel must memorialize efforts taken to ensure entry of a QPO in individual member cases.  No PHI may be disclosed in individual member cases if Aetna has not obtained either a HIPAA Authorization or if a QPO is not in place.

6.   Transmission of PHI in Litigation

The transmission of PHI to opposing counsel or to any third party consistent with the above must be done in a HIPAA-compliant manner, pursuant to 45 C.F.R. § 164.312.

*Further, in cases involving specific classes of PHI, including information relating to health plan members' HIV status or behavioral health or substance use, Aetna and/or retained litigation counsel must assess relevant laws and regulations addressing those specific classes of PHI to ensure compliance with those laws and regulations prior to transmission of PHI in litigation.*

7.   Chain of Custody Documentation

Each disclosure of PHI must have a complete chain of custody documented in the case file.  For example, Aetna must have a BAA between Aetna and retained litigation counsel before sending any PHI to the law firm, and any PHI disclosed to retained litigation counsel should be recorded in the case file.

For Aetna Use Only

Use of Protected Health Information in Litigation – Best Practices Policy

In addition, before any PHI is disclosed to an Aetna-retained expert or consultant, Aetna and/or retained litigation counsel must have a BAA or sub-BAA with the expert or consultant.  Further, before any PHI is disclosed to an Aetna-retained litigation support vendor, Aetna and/or retained litigation counsel must have a BAA or sub-BAA with the vendor.  As noted above in Section 4, it is Aetna's policy to require Aetna-retained experts, consultants and litigation support vendors to also execute an affidavit or declaration agreeing to comply with the terms of the QPO.   It is Aetna's policy to maintain a record of each disclosure of PHI by Aetna and retained litigation counsel to ensure compliance with this Best Practices Policy.

Further, before any PHI is disclosed to an opposing party by Aetna and/or retained litigation counsel, a QPO (and/or a signed HIPAA Authorization, in individual member cases) must be on file with Aetna prior to disclosure.  Aetna's form QPO prohibits opposing counsel from disclosing PHI to any third party unless and until the third party executes an affidavit or declaration agreeing to comply with the terms of the QPO.  As noted above, retained litigation counsel should also attempt to obtain agreement from opposing counsel that any subsequent disclosures of PHI by opposing counsel to any third party require prior notification by opposing counsel to Aetna of the disclosure, including to whom the disclosure is being made and the purpose of the disclosure.

Aetna will engage in periodic audits of case files to ensure compliance with this section.

8.      Communications with Members

In any matter in which a communication will be sent by Aetna or on Aetna's behalf, retained litigation counsel and/or an Aetna-retained consultant or vendor to members who are not a named party to the lawsuit (*e.g.*, putative class members or class members) and the communication includes any suggestion of a member's health condition or treatment or otherwise contains any member PHI, the substance and form of the communication ***must first be approved in writing by both the Court and by Aetna's Privacy Office,*** and any vendor to be used for the communication and any follow-up communications must be approved by Aetna in writing.  It is a best practice in all communications with members (regardless of whether the member is a named party) to limit the inclusion of a member's health condition or treatment or PHI to the minimum necessary.

9.      Government Investigations

This Best Practices Policy also applies to government investigations, as appropriate under the circumstances.  Aetna must receive adequate assurances from government agencies demanding PHI, prior to disclosure, that PHI will be subject to the highest degree of protection and will not be disclosed or transmitted to any third party without advance notice to Aetna and an opportunity to take action.

10.      Return or Certification of Destruction of PHI

At the conclusion of each litigation matter, Aetna and/or retained litigation counsel must obtain the return, or a written certification of destruction, of PHI by opposing counsel and all third parties to whom

Standard Operating Procedure

Use of Protected Health Information in Litigation – Best Practices Policy

disclosure of the PHI was made before, during or following the litigation.  This includes opposing counsel, any third party with whom opposing counsel disclosed the PHI, Aetna-retained experts and consultants, and litigation support vendors (including claims and settlement administrators).  In consultation with Aetna and retained litigation counsel, and subject to approval by Aetna's Head of Litigation, opposing counsel may retain work product that includes PHI, provided that opposing counsel continues to be subject to the terms of the QPO and agrees that the PHI will be subject to the highest degree of protection.

11.     Mandatory Education and Training

Aetna shall implement initial and annual training of the best practices in handling PHI in litigation for Aetna's litigation staff and retained litigation counsel on Aetna matters.  Relevant litigation staff includes all personnel who may receive or transmit PHI, or who are responsible for the maintenance of records containing PHI, and may include non-lawyers.

12.     No Admission or Waiver

Nothing in this Best Practices Policy shall be deemed an admission by Aetna of its legal requirements or a waiver of any of Aetna's rights, remedies or defenses.

*        *        *        *        *        *        *

Any questions regarding this policy may be directed to Aetna's Head of Litigation ("Head of Litigation;" currently, Ed Neugebauer).

For Aetna Use Only